**HOME CARPET, INC., Appellant,**

v.

**BOB ANTRIM HOMES, INC., Defendant, El-
mer F. Heckinger, Defendant-Appellee, Dar-
lene Heckinger, Defendant-Appellee, A. A.
Schneiderhahn Co., et al., Defendants, and
Weston, Inc., doing business as Weston
Lighting, Defendant-Cross Petitioner-Ap-
pellant.**

No. 55820.

Supreme Court of Iowa.

Sept. 19, 1973.

Neiman, Neiman, Stone & Spellman, Des Moines, for appellant and for defendant-cross petitioner-appellant, Weston, Inc.

Beving, Swanson & Forrest, Des Moines, for defendants-appellees, Elmer F. Heckinger and Darlene Heckinger.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and UHLENHOPP, JJ.

RAWLINGS, Justice.

Appeals by plaintiff Home Carpet Inc., and defendant cross-petitioner Weston, Inc., doing business as Weston Lighting, from judgment dismissing their respective mechanic's lien enforcement actions. We reverse.

July 24, 1967, defendant Bob Antrim Homes, Inc. (Antrim), then record titleholder of a lot located in Polk County, entered into an agreement with defendant Elmer F. Heckinger (Heckinger) for sale to him of the aforesaid real estate. Antrim was thereby obligated to construct a house on the lot according to specifications embodied in the agreement. He was further required to obtain a construction loan, secured by a mortgage which Heckinger would assume on completion of the improvement. At that time Antrim was to deliver a warranty deed to Heckinger and in turn receive the contractual balance due. The above mentioned loan was obtained by Antrim in August of 1967.

Construction commenced the following month. During the latter stages thereof, at Antrim's request, Heckinger and his wife (Heckingers) went to Home Carpet and chose floor covering for the house. The selected carpeting was delivered January 31, 1968. At about the same time Heckingers were directed to select fixtures to be furnished by Weston, Inc., doing business as Weston Lighting (Weston). With the exception of a replacement fixture installed March 19th, all materials provided by Weston were delivered and installed by mid-February 1968.

Heckingers took possession of the house late in February, and March 22, 1968, assumed the aforesaid construction mortgage obligation. Contemporaneously Heckinger paid Antrim $1500 of $2580 remaining due on the contract. Unknown to Heckinger, Antrim had not paid Home Carpet or Weston for materials supplied by them.

Mechanics' liens were filed by Weston and Home Carpet August 12th and 16th respectively in 1968. During the interval between completion of the house and filing of the liens Antrim declared bankruptcy, precluding contract recovery against it.

March 30, 1970, Home Carpet, by the instant equitable action against Antrim, Heckingers, Weston and other lienholders, asserts Antrim was at all material times the realty owner, and seeks to establish and obtain satisfaction of its lien claim.

Weston answered, then cross-petitioned against Antrim, Heckingers, Home Carpet and other lienholders, likewise seeking to establish and enforce its lien claim.

In answer to each such claimant Heckinger asserts sole ownership of the realty, and alleges the instantly involved liens were not timely filed.

Trial court concluded (1) from inception of the purchase agreement Heckinger was the sole owner under applicable mechanic's lien law; (2) Home Carpet and Weston were therefore subcontractors; (3) neither Home Carpet nor Weston filed their lien claims in a timely manner; and (4) neither Home Carpet nor Weston gave Heckinger requisite statutory notice of lien. Both lien claims were accordingly dismissed.

In support of a reversal these appealing claimants contend, trial court erred in fail-

ing to hold (1) material was sold and furnished by them to an owner; or in any event, (2) claimants sold and furnished materials to an agent of an owner.

■ I. Since this case stands in equity it is accordingly entertained de novo on appeal. See Northern Natural Gas Company v. Forst, 205 N.W.2d 692, 694 (Iowa 1973). Trial court's findings are therefore given weight although not binding upon us. See Iowa R.Civ.P. 344(f)(7).

II. Before addressing ourselves to the issues instantly presented it is appropriate we note, in essence, the differentiated treatment accorded contractors and subcontractors by chapter 572.

Contractors are those persons engaged directly by an owner, his agent, or trustee to furnish material for or perform labor upon any building or other improvement. See The Code 1966, Section 572.1(2).

All others furnishing labor or material for a building or other improvement are subcontractors. See Code § 572.1(2).

While contractors have ninety days after last furnishing materials or labor within which to file their liens, subcontractors must do so within sixty days after such completion of performance. See Code § 572.9.

Contractors who fail to file within the statutorily allotted time are substantially unaffected as to their rights against an owner, although they lose priority as to purchasers, encumbrancers or other persons who acquire an interest in good faith, absent notice and for valuable consideration after expiration of the time for filing of lien claims. See Code § 572.18.

On the other hand, subcontractors failing to comply with § 572.9 must, in addition to filing their claim, give written notice to the owner, his agent, or trustee. See Code § 572.10. And a subcontractor's lien, perfected under § 572.10, can only be enforced to the extent of the balance due a

contractor by the owner at time notice of lien filing is served. See Code § 572.11.

III. Mindful of the foregoing we must now determine whether trial court erred in failing to inceptionally find Antrim was an owner.

In defining owners, under mechanic's lien law The Code 1966, Section 572.1 provides:

"For the purpose of this chapter:

"1. 'Owner' shall include every person for whose use or benefit any building, erection, or other improvement is made * * *."

To the same effect is this statement in Society Linnea v. Wilbois, 253 Iowa 953, 959, 113 N.W.2d 603, 606 (1962):

"We have often discussed the statutory definition of 'owner'. Section 572.1, Code, 1958. It has been said the term embraces the ordinarily accepted meaning of the word, and also includes every person 'for whose use or benefit' the improvement is made."

Reduced to bare essentials, the question posed is whether a title retentive vendor of realty, who retains possession thereof and improves same under an executory contract with his vendee, has ownership status within the purview of our mechanic's lien laws.

In that regard Heckinger contends, through application of the doctrine of equitable conversion, he was sole owner of the realty from date of purchase contract execution. We disagree.

■ It must be conceded that under ordinary circumstances an executory contract for sale of land works an equitable conversion whereby the vendor's interest becomes personalty and the vendee is actually seized of the estate. See H. L. Munn Lumber Company v. City of Ames, 176 N.W.2d 813, 816 (1970).

That theory was considered and discussed at length in Knapp v. Baldwin, 213

Iowa 24, 27, 238 N.W. 542 (1931), and other related mechanic's lien cases in which the vendee possessed and improved the realty. But in neither Knapp nor its progeny did this court hold an improving vendee of realty is, through equitable conversion, made "the" owner thereof.

On the contrary, we have said: "[U]nder certain circumstances, both the vendor and the vendee in a contract of sale may be the owner of the real estate within the meaning of the Mechanics' Lien Law". Knapp v. Baldwin, *supra,* and citations. See 45 Iowa L.Rev. 813, 817 n. 20 (1960). See generally 91 C.J.S. Vendor and Purchaser § 106(a).

And as aptly stated in 57 C.J.S. Mechanics' Liens § 71(b):

"Where a person sells real property under agreement that certain improvements are to be made on it by him, a lien for work performed for, or materials furnished to, him may exist on the theory that he is the owner of the property * * *."

In analogous situations this court has repeatedly held, if a vendor has contractually required his vendee to improve the realty he is held to have subjected his interest therein to mechanic's lien claims for labor and material supplied at the vendee's instance. See e.g., Denniston & Partridge Co. v. Romp, 244 Iowa 204, 208–212, 56 N. W.2d 601 (1953).

Thus Antrim was not, under the equitable conversion approach, ipso facto, removed from ownership status. By the same token Heckinger was not necessarily made "the" owner, but merely "an" owner within the purview of our mechanic's lien law.

Turning now to relevant facts instantly presented, the record reveals (1) Antrim at all times material hereto retained record title to the involved realty; (2) it was improved by Antrim pursuant to an agreement with Heckinger; (3) Antrim retained possession of the realty until completion of the contractually required im-

provements; and (4) Home Carpet and Weston supplied labor and materials for such improvements at Antrim's instance and request.

Under these circumstances we are satisfied Antrim was "an" owner within the contemplation of our mechanic's lien laws.

That in turn means Home Carpet and Weston, having been engaged by Antrim to supply materials or labor for improvements on the instantly involved realty were contractors, not subcontractors.

Research reveals this conclusion is amply supported by the greater weight of apparent authority. See Hannan v. Handy, 104 Conn. 653, 134 A. 71, 72 (1926); West Lumber Co. v. Gignilliat, 77 Ga.App. 336, 48 S.E.2d 688, 690–691 (1948); Toler v. Satterthwaite, 200 Kan. 103, 434 P.2d 814, 819–820 (1967); Logan-Moore Lumber Company v. Black, 185 Kan. 644, 347 P.2d 438, 443 (1959); J. H. Magill Lumber Co. v. Carter, 17 S.W.2d 581, 583–584 (Mo. App.1929); Oklahoma Hardware Company v. Townsend, 494 P.2d 326, 330–331 (Okl.1972); Evans-Lee Co. v. Knudtson, 190 Wis. 207, 208 N.W. 872, 873–874 (1926). See also 53 Am.Jur.2d, Mechanics' Liens, §§ 120, 123; Annot. 50 A.L.R.3d 944; Jensen on Mechanics' Liens, § 65 (4th ed. 1963). Contra, Hessinger v. Sorenson, 180 N.W.2d 910, 915 (N.D.1970).

IV. Heckingers assert, however, failure on the part of Home Carpet and Weston to file their lien claims in a timely manner, or to give notice of filing such claims, in any event, precludes their instant right of recovery.

This in turn necessitates further reference to the factual situation here involved. With regard to the problem at hand, it reveals (1) July 24, 1967, Antrim and Heckinger entered into a purchase-sale agreement; (2) January 31, 1968, Home Carpet last furnished materials; (3) mid-February, 1968, Weston last furnished materials; (4) March 22, 1968, Heckingers assumed the mortgage, and acquired full ownership of the property; (5) at that time, the nine-

ty day statutory period for filing contractor's liens had not elapsed.

 Since the aforesaid property was not transferred or encumbered *after* expiration of the time for Home Carpet and Weston to file their lien claims, any failure to file such claims within the statutorily designated period did not affect their rights as against the Heckingers. See Crane Co. v. Westerman, 232 Iowa 1394, 1398, 8 N.W.2d 412 (1943). See also Code §§ 572.9, 572.18.

And contractors, such as the instant claimants, unlike subcontractors, are not required to give notice of lien filing to an owner, even when the lien is belatedly asserted. Compare with Code § 572.11.

It therefore follows trial court erred in dismissing actions by plaintiff Home Carpet, Inc., and defendant Weston, Inc., doing business as Weston Lighting, for enforcement of their respective mechanic's lien claims.

We accordingly reverse and remand on both appeals for further proceedings consistent with this opinion.

Reversed and remanded.