**Larry Duane SMITH, Appellee,**

v.

**LINN COUNTY, Iowa, Appellant.**

**No. 69599.**

Supreme Court of Iowa.

Jan. 18, 1984.

Denver D. Dillard, County Atty., and Allan L. Harms, and Craig A. Kelinson, Asst. County Attys., for appellant.

Michael J. Newmeister, Cedar Rapids, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and WOLLE, JJ.

WOLLE, Justice.

The narrow question presented in this case is whether a county must reimburse a person who incurs necessary medical expense after being arrested and taken to a hospital for treatment. The trial court found that plaintiff Larry Duane Smith was in the custody of the sheriff during his hospital stay and entered judgment against the county for the cost of his medical and hospital care based on the Iowa statute requiring that prisoners be furnished with necessary medical aid. We conclude that Iowa statutes do not provide a basis for plaintiff's claim and therefore reverse.

Smith was involved in a fight at the Hub Tavern in Cedar Rapids on August 17, 1977. Police officers who responded to a call to the tavern placed Smith under arrest and transported him to a local hospital for emergency treatment because his jaw was broken. The officers instructed hospital personnel that Smith was "on hold" and should not be released without notice to the authorities. Smith received emergency treatment and then surgery to repair his jaw; he remained in the hospital for about two weeks and incurred necessary medical and hospital expenses of $3,494, part of which he paid. While he was in the hospital Smith was charged by trial information with the crime of criminal trespass in violation of Iowa Code section 729.1 (1977), a charge on which he was later convicted based on the guilty plea which he entered

after leaving the hospital. Although the facts were disputed, substantial evidence supports the trial court's finding that from the time of his arrest Smith was in the custody of the Linn County sheriff who would have housed him in the Linn County jail but for the seriousness of his injuries. The legal issue we must decide is whether Smith or the county is primarily liable for the cost of his medical and hospital expenses under these circumstances.

The trial court based its judgment against the county on Iowa Code section 356.5 (1977), which provided in part:

The keeper of each jail shall:

.   .   .   .   .

2. *Furnish* each prisoner with necessary bedding, clothing, towels, fuel, and *medical aid.*

(Emphasis added.) The trial court also relied upon an Iowa decision which construed very similar language in a predecessor statute. In *Miller v. County of Dickinson*, 68 Iowa 102, 26 N.W. 31 (1885), this court said:

If the prisoner cannot be confined in jail, he must be somewhere else, and the county is responsible for necessaries furnished him, if the circumstances were such that the prisoner could not be confined in jail.

68 Iowa at 105, 26 N.W. at 32. The *Miller* case involved a claim against the county by the person who provided the care for the wounded prisoner, not a claim by the prisoner who received the care. The trial court did not distinguish *Miller* on this basis and concluded that the county was responsible not only to make medical services available to the prisoner but also to indemnify the prisoner for expenses he had incurred. The trial court thus gave to the word "furnish" in the statute its broadest possible meaning.

"Furnish" may mean "to provide or supply with with what is needed, useful or desirable" and need not include the concept of payment, "to make a gift of (something needed or desirable)." *See* Webster's Third New International Dictionary (1976). We

find the word "furnish" in section 356.5 ambiguous and therefore must determine which of these two possible meanings was intended.

In interpreting ambiguous statutes and determining the intent of the legislature our court may consider among other matters the object sought to be attained, the circumstances under which the statute was enacted, the common law or former statutory provisions, and the consequences of a particular construction. Iowa Code § 4.6 (1983). Here we are called upon to interpret not only the above-quoted statute upon which the trial court relied but also Iowa Code section 356.15 (1977) which provided:

Expenses. All charges and expenses for the safekeeping and maintenance of prisoners shall be allowed by the board of supervisors, except those committed or detained by the authority of the courts of the United States, in which cases the United States must pay such expenses to the county, and those committed for violation of a city ordinance, in which case the city shall pay expenses to the county.

Both Iowa Code sections 356.5 and 356.15 had counterparts in earlier Iowa codes, and the word "furnish" in the predecessor to section 356.5 was construed in an early Iowa case to mean "obtain or procure." *Feldenheimer v. The County of Woodbury*, 56 Iowa 379, 380, 9 N.W. 315, 315 (1881) [construing Iowa Code §§ 4727, 4735 (1880)]. It is apparent from the *Feldenheimer* and subsequent *Miller* case quoted by the trial court that the objects of the two statutory provisions were two-fold: to require that jailers make such life-sustaining necessities as medical services available to all prisoners and to assure payment by the appropriate governmental unit to persons who provide those services. The statutes were not intended to insulate the prisoners themselves from payment for medical services rendered for their benefit.

The construction which plaintiff would place on these statutes is unacceptable for several reasons. Prisoners who could afford to pay the cost of their own medical and hospital care would often receive a windfall—free medical and hospital care resulting from their own wrongful acts which necessitated incarceration. Insurers of prisoners might reap the same windfall; if the prisoner could seek indemnity for such expenses, a subrogated insurer would logically be entitled to reimbursement as well. Additionally the requirement that the county reimburse prisoners for the cost of medical care could have a serious chilling effect on the underlying purpose of the statutes— the assured delivery of necessary medical and hospital care to prisoners. If the county were always required to indemnify the prisoner for the cost of medical care, county officials might become hesitant to provide adequate care in borderline cases.

Prisoners do have a due process right to receive medical care while they are in custody. *City of Revere v. Massachusetts General Hospital*, — U.S. —, —, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605, 611 (1983). So long as that medical care is in fact provided, however, the Constitution does not dictate how the cost of that medical care is allocated or paid as between the governmental entity and the provider. That is a matter of state law. *Id.* We hold that the allocation of the cost of medical care between the prisoner and the responsible governmental unit is also a matter of state law and in Iowa depends upon our interpretation of the above-quoted statutes. The Iowa statutes in question require not that a county reimburse prisoners for medical expenses they have paid or incurred but only that the medical services in fact be made available to the prisoner. Linn County satisfied its responsibility to make medical care available to plaintiff; it should not have been held liable to plaintiff for the cost of that care.

REVERSED.