LOUIE'S FLOOR COVERING, INC., Appellant,

v.

DePHILLIPS INTERESTS, LTD., Defendant,

and

Robert K. McNurlen, Appellee.

No. 85–275.

Supreme Court of Iowa.

Dec. 18, 1985.

James L. Sayre and Linda G. Hanson of Sayre & Gribble, P.C., Des Moines, for appellant.

William Wimer and Steven H. Shindler of Wimer, Hudson, Flynn & Neugent, P.C., Des Moines, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, LARSON, CARTER and WOLLE, JJ.

HARRIS, Justice.

This action to foreclose a mechanic's lien presents again the question of who must stand the loss occasioned by a failed building contractor. Is it the purchaser of a house who paid the full purchase price to the builder, or is it the furnisher of material and labor who was not paid by the builder? In *Home Carpet, Inc. v. Bob Antrim Homes*, 210 N.W.2d 652 (Iowa 1973), we placed the loss on the purchaser. Under the facts here, and especially under Iowa's amended mechanic's lien statute, the trial court assigned the loss to the business which furnished the goods and services under a contract with the builder. We affirm.

On March 11, 1984, defendant Robert McNurlen (the buyer) entered into a writ-ten contract with defendant DePhillips Interests, Ltd. (the builder) for the purchase of a residential dwelling in West Des Moines. The builder owned the property and was constructing the house there at the time. Extensive finishing work remained to be done.

On April 23rd, plaintiff Louie's Floor Covering, Inc. (the supplier) orally contracted with the builder to furnish and install floor covering for the house. The supplier began installing linoleum immediately and completed the job on April 24th. On April 30th, the supplier began installing the carpet, finishing on May 2nd.

On May 1st, the buyer paid the builder the full contract price, without withholding payment for the supplier or obtaining lien waivers or a bond to assure the supplier would be paid. On the same day the builder deeded the property to the buyer. The deed was promptly recorded. The buyer moved into his new home on June 16th. On June 27th, he received the supplier's mailed notice of a mechanic's lien which had been filed on June 20th. The lien listed the buyer as owner of the property and claimed that $3,383.64 (plus interest from May 8, 1984) was owed for the floor covering. The buyer did not receive a written notice containing the language required by Iowa Code section 572.14(3) (1985) (quoted below).

The supplier filed this action to foreclose his lien against both the builder and the buyer. The builder went out of business and did not appear. The buyer answered and moved for summary judgment, claiming to be an "owner-occupant" under amended chapter 572. He thus claimed he should have received the notice contemplated in section 572.14(3). Because he did not, the buyer contends the lien was "invalid and unenforceable."

The supplier resisted, contending a mechanic's lien arises upon the furnishing of labor and materials, if filed within the statutory period, and relates back to the date work commenced. The builder and not the buyer, the supplier contended, was the

owner on the date the labor and materials were furnished. The supplier also argued it was a principal contractor when it furnished the labor and material for the dwelling and for this reason contended the amended portions of chapter 572 (relied upon by the buyer) had no application.

The trial court rejected the supplier's arguments and concluded the amended provisions of chapter 572 should be applied. The court held the property was an "owner-occupied dwelling" under section 572.-1(5) and that the buyer was the "owner" of the property pursuant to section 572.1(1). The trial court further found that the supplier was a subcontractor under section 572.1(2) and was thus required to give the written notice required by section 572.14(2). Because the supplier failed to provide that notice the court concluded it was not entitled to enforce the mechanic's lien. This appeal followed.

I. It is unnecessary to recite the principles by which we review a grant of summary judgment. *See Brown v. Monticello State Bank of Monticello,* 360 N.W.2d 81, 83–84 (Iowa 1984). No unresolved issues of material fact are presented here. Instead, the appeal turns on whether recent changes in chapter 572 apply or whether the case is controlled by *Home Carpet.*

In *Home Carpet,* the builder contracted with the buyers to construct a house according to written specifications. Carpet was selected at the suppliers by the buyers. The buyers later took possession without knowing the builder failed to pay the supplier. We held the builder, not the buyers, was the owner "within the contemplation of our mechanic's lien laws," and that the suppliers, "having been engaged by [the builder] to supply materials or labor for improvements ... were contractors, not subcontractors." 210 N.W.2d at 655.

Under *Home Carpet,* a home buyer could easily become liable to contractors or subcontractors who are not paid by builders and remodeling contractors. To avoid liability vendees would be required, under the holding, either to withhold payment when settling with the builder or obtain lien waivers or a bond from the builder in order to assure payment to the builder's contractors and subcontractors. Stone, *Mechanic's Liens in Iowa,* 30 Drake L.Rev. 39, 81 (1981).

In 1981, the legislature extensively amended chapter 572, apparently to alleviate the harsh results noted in *Home Carpet. See* 1981 Iowa Acts ch. 186. The most significant change was the amendment of section 572.1 to include the term "owner-occupied dwelling":

"Owner-occupied dwelling" means the homestead of an owner, as defined in section 561.1, and without respect to the value limitations in section 561.3, and actually occupied by the owner or the spouse of the owner, or both. *"Owner-occupied dwelling" includes a newly constructed dwelling to be occupied by the owner as a homestead, or a dwelling that is under construction and being built by or for an owner who will occupy the dwelling as a homestead.*

1981 Iowa Acts ch. 186, § 1 (emphasis added).

Section 572.14 was also extensively amended to provide:

In the case of an owner-occupied dwelling, a mechanic's lien perfected under this chapter is enforceable only to the extent of the balance due from the owner to the principal contractor at the time written notice, in the form specified in subsection 3, is served on the owner. This notice may be served by delivering it to the owner or the owner's spouse personally, or by mailing it to the owner by certified mail with restricted delivery and return receipt to the person mailing the notice, or by personal service as provided in the rules of civil procedure.

1981 Iowa Acts ch. 186, § 2. The notice was required to include the following information:

The person named in this notice is providing labor or materials or both in connection with improvements to your residence or real property. Chapter 572 of the Code of Iowa may permit the enforcement of the lien against this proper-

ty to secure payment for labor and materials supplied. You are not required to pay more to the person claiming the lien than the amount of the money due from you to the person with whom you contracted to perform the improvements. You should not make further payments to your contractor until the contractor presents you with a waiver of the lien claimed by the person named in this notice. If you have any questions regarding this notice you should call the person named in the notice at the phone number listed in this notice or contact an attorney. You should obtain answers to your questions before you make any payments to the contractor.

*Id.* The rule of construction set forth in section 572.16 was also amended to underscore the new protections given to "owner-occupiers":

Nothing in this chapter shall be construed to require the owner to pay a greater amount or at an earlier date than is provided in the owner's contract with the principal contractor, unless said owner pays a part or all of the contract price to the original contractor before the expiration of the sixty days allowed by law for the filing of a mechanic's lien by a subcontractor; *provided that in the case of an owner-occupied dwelling, nothing in this chapter shall be construed to require the owner to pay a greater amount or at an earlier date than is provided in the owner's contract with the principal contractor, unless the owner pays a part or all of the contract to the principal contractor after receipt of notice under section 572.14, subsection 2.*

1981 Iowa Acts ch. 186, § 3 (emphasis added).

Other portions of chapter 572 were not amended in 1981 but are nevertheless significant here. "Owner" is defined as

every person for whose use or benefit any building, erection, or other improvement is made, having the capacity to contract, including guardians.

Iowa Code § 572.1(1) (1985). "Subcontractor" includes

every person furnishing material or performing labor upon any building, erection, or other improvement, except those having contracts therefor directly with the owner, the owner's agent, or trustee.

Iowa Code § 572.1(2) (1985).

■ II. We subscribe to the trial court's interpretation of the amended chapter. The buyer here was an "owner" under section 572.1(1) because he was a "person for whose use or benefit" the house was built. *See Clemens Graf Droste Zu Vischering v. Kading*, 368 N.W.2d 702, 708 (Iowa 1985) (in case involving commercial property, "owner" under mechanic's lien statute includes both the buyer and seller under an executory contract); *Northwestern National Bank of Sioux City v. Metro Center*, 303 N.W.2d 395, 400–01 (Iowa 1981) (contract vendee had "sufficient interest" in real estate "to provide a basis for a mechanic's lien"); *Society Linnea v. Wilbois*, 253 Iowa 953, 958, 113 N.W.2d 603, 606 (1962) ("Some beneficial ownership in real property by one who receives the benefit of labor and material under a contract ... has always been ... a necessary element ... of a mechanic's lien in Iowa."); Stone, *supra*, at 48–49; *see generally* Annot., 50 A.L.R.3d 944 (1973).

■ III. The trial court was also correct in finding the house to be an "owner-occupied" dwelling under section 572.1(5). It was under construction and was being built for the buyer. The buyer intended to occupy the dwelling as a homestead. This is all the statute requires.

■ IV. Finally, we agree that the supplier was a subcontractor, not a contractor, under section 572.1(2). That section provides:

*"Subcontractor"* shall include every person furnishing material or performing labor upon any building, erection, or other improvement, except those having contracts therefor directly with *the owner*, the owner's agent, or trustee.

(Emphasis added.) It is true that the builder retained legal title when he contracted with the supplier. This did not make him the "owner" in the sense that he was entitled to the protections under chapter 572. He was by then obligated to complete construction and convey by reason of his real estate contract with the buyer. He was in fact acting as a contractor. The buyer, on the other hand, made no contract with the supplier but instead arranged with the builder to furnish materials for completing the house. We think the clear intent of the amendment was to make suppliers such as this plaintiff subcontractors. *See Guldberg v. Greenfield,* 259 Iowa 873, 885, 146 N.W.2d 298, 305 (1966); *Des Moines Furnace and Stove Repair Co. v. Lemon,* 244 Iowa 316, 319, 56 N.W.2d 923, 925 (1953).

◼ V. Sound public policy considerations support the trial court ruling. We have already mentioned the legislative purpose behind protecting persons such as this buyer. The new legislation was designed to avoid hardship when the principal contractor goes bankrupt or becomes "defunct," as in the present case.

The supplier argues that other protections, such as lien or bond waivers, were available to the buyer. Home buyers, however, unless they consult with an attorney or happen to be conversant with mechanic's liens, are likely to be unaware of such protections. As one commentator noted in discussing the harsh results inherent in chapter 572 before its amendment:

> Perhaps it should be recognized that subcontractors are in a better position to evaluate the credit of the contractor with whom they contract than is the homeowner. Subcontractors might then reasonably be expected to assume some of the risk of doing business with a financially troubled contractor. This recognition would warrant changing the rules of direct lien liability, or enacting some type

of early notice requirement or other means for the protection of consumers, both as home purchasers and as homeowners contracting for improvements or repairs.

Stone, *supra,* at 82. We think the legislature was responding to these concerns when it amended chapter 572. *See Smith v. Linn County,* 342 N.W.2d 861, 863 (Iowa 1984) (in determining intent of legislature, court considers "the object sought to be attained, the circumstances under which the statute was enacted, the common law or former statutory provisions, and the consequences of a particular construction"); Iowa Code § 4.6 (1985).

◼ The supplier argues that a potential home buyer was not intended to be the recipient of the benefits conferred by the 1981 amendments because of the harsh consequences which would result by including all potential home buyers. We disagree. We think home buyers and owners were the ones primarily intended for protection. We agree with the observation of the Minnesota supreme court in interpreting its mechanic's lien statutes. In *C.W. Stark Lumber Co. v. Sether,* 257 N.W.2d 556, 560 (Minn.1977), that court said that the purpose of the "notice" provision "is to protect an innocent homeowner.... If an innocent party must be hurt, the materialman is less favored than a homeowner because the materialman is far more sophisticated and familiar with the construction industry and better able to protect himself than is the homeowner."

AFFIRMED.