**IOWA ELECTRIC LIGHT AND POWER COMPANY, Appellant,**

v.

**UTILITIES BOARD, UTILITIES DIVISION, DEPARTMENT OF COMMERCE, STATE OF IOWA, Appellee,**

v.

**CONSUMER ADVOCATE DIVISION, IOWA DEPARTMENT OF JUSTICE, Intervenor.**

No. 88–1115.

Supreme Court of Iowa.

June 14, 1989.

Thomas J. Pitner and Jonathan M. Rogoff, Cedar Rapids, for appellant.

Susan Allender, Gen. Counsel, Gary Stump and Allan Kniep, Asst. Gen. Counsel, Dept. of Commerce, for appellee Bd.

James R. Maret, Consumer Advocate, and William A. Haas, Office of Consumer Advocate, for intervenor Consumer Advocate Div.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

In this case a public utility, Iowa Electric Light and Power Co. (IE), challenges the Iowa utility board's interpretation of one of its own rules. The company contends the rule should be interpreted and applied to its advantage, also that the rule was improperly amended. The district court rejected the utility's claims and we affirm.

The dispute was precipitated by federal legislation, the tax reform Act of 1986 which was signed into law on October 22, 1986. It reduced the maximum corporate income tax rate from forty-six percent to thirty-four percent, effective July 1, 1987. Utility rates allowed under the board's supervision are of course directly related to the utility corporation's net earnings so the federal legislation had enormous impact on decisions concerning allowable utility rates.

A significant and prompt administrative response was necessary; utilities should not be allowed to charge rates based on a forty-six percent income tax rate while actually paying thirty-four percent. The board determined to address two groups of utilities separately. Those with pending contested cases were each ordered to implement rate reductions attributable to tax reform. As to other utilities, those not involved in pending contested cases, the board adopted an administrative rule to do the same thing.

There was a reasonable basis for treating the groups differently. It was plainly in the public interest for the lower tax rate to be expeditiously reflected on utility rates. But the general administrative rule paid somewhat in imprecision for the advantage it gained by way of its immediate and widespread application. Therefore, under the rule, the tax reform adjustment was undertaken with 1986 data. But the 1986 data was as yet untested, leading to a certain amount of imprecision. On the other hand it was thought that this imprecision was outweighed by an advantage to the public. A rate adjustment could be ordered forthwith, thus passing the tax windfall from the utility companies on to their consumers.

There was however no necessity for imprecision for companies with pending rate cases. As to them the board determined to order adjustments for the tax reform in the rate cases. With these companies the imprecision could be avoided because their data was proven in a contested rate proceeding.

The intended limitations of the general administrative rule were explained in its preamble as it was disseminated to the public in the Iowa Administrative Bulletin. IAB 2/25/87 p. 1448. It stated:

> The rules apply only to those rate-regulated investor-owned utilities which have not otherwise recognized the effects of tax reform in Board approved rates.

The rule was adopted February 6, 1987, to be effective April 1, 1987. At the center of this litigation is the provision in the rule which describes its scope. As originally[1] adopted it stated:

> Applicability. Each rate-regulated investor-owned public utility shall include in its charges or rates to customers an amount attributable to state and federal tax liability no greater than the tax liability based on the Tax Reform Act of 1986.

199 Iowa Admin.Code § 30.1. The controlling question is whether this provision applies to IE.

---

1. The rule was later amended by adding the words "unless otherwise ordered by the board in a rate case proceeding." Although IE contends this was an illegal amendment changing the rule's meaning, we think the amendment merely restated the original meaning for purposes of clarification. We do not rely on the amendment to reach this conclusion.

The board entered an order in IE's contested case proceeding on March 4, 1987. This order thoroughly discussed the effect of federal tax legislation and directed IE to adjust its rates and to reflect any changes resulting from the tax reform. The stakes are high. Use of the untested 1986 data, rather than the tested data from 1985, would result in $2.8 million in additional rate revenue to IE.

IE filed information designed to comply with the rule, using not data from 1985 (its original test year) but untested data from 1986. The board rejected this May 1 filing. IE contends the rejection was improper.

I. On judicial review of agency action the district court's role, as well as our own, is controlled by Iowa Code section 17A.19 (1987). *Morrison v. Century Eng'g,* 434 N.W.2d 874, 876 (Iowa 1989). When the district court exercises the power of judicial review conferred by section 17A.19(8), it functions in an appellate capacity to correct errors of law on the part of the agency. *Barker v. Iowa Dep't of Transp.,* 431 N.W.2d 348, 349 (Iowa 1988). Iowa Code section 17A.19(8) provides the exclusive means for challenging agency action and lists the standards for determining whether the correct law was applied. *Mercy Health Center v. State Health Facilities Council,* 360 N.W.2d 808, 811 (Iowa 1985).

 II. IE portrays the case as one of disparate treatment. It focuses narrowly on the expansive language of the applicability provision and its direction to adjust rates in accordance with the general rule. In IE's view the general rule was thereby made to apply alike to utility companies with or without pending contested cases. IE contends the board's order to compel the use of tested 1985 data by those companies with pending contested cases was an improper denial of the uniform application of its rule.

It is apparent to us that IE overreads the applicability provision of the general rule and reads it out of context. The scope of the rule is indicated, not only by its preamble, but also by other language. The applicability provision is followed by one of implementation which indicates that not all utilities are to be governed by the chapter. It begins: "Each utility subject to the provision of this chapter...." 199 Iowa Admin.Code § 30.2.

 The choice of whether to develop a policy by rule, contested case, or both, rests within the informed discretion of the administrative agency. *Lenning v. Iowa Dep't of Transp.,* 368 N.W.2d 98, 102 (Iowa 1985). It was entirely proper for the board to order the changes necessitated by the new tax law in ongoing rate cases at the same time it was promulgating the rule. *Young Plumbing and Heating v. Iowa Natural Resources Council,* 276 N.W.2d 377, 382 (Iowa 1979). We find no inconsistency between the board's action in adopting the general rule and its action at the same time in the pending rate cases.

The board clearly acted within its authority and it was reasonable for it to insist on tested data in those cases in which it was available.

AFFIRMED.