**GTE NORTH INCORPORATED,
Appellant,**

v.

**IOWA STATE UTILITIES BOARD, DIVISION OF the DEPARTMENT OF COMMERCE, STATE OF IOWA, Appellee.**

**Office of Consumer Advocate, Division of The Department of Justice, State of Iowa, Intervenor.**

No. 90–654.

Supreme Court of Iowa.

July 17, 1991.

Robert F. Holz, Jr., and Diane M. Stahle of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellant.

Susan Allender, Gen. Counsel, and Allan Kniep, Asst. Gen. Counsel, Iowa Utilities Bd., for appellee.

James R. Maret, David R. Conn, and Alice J. Hyde, Des Moines, for intervenor Consumer Advocate.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

This is an action to review an order of the Iowa State Utilities Board (the Utilities Board) which required the petitioner, GTE North, Inc. (GTE), to refund to its customers a portion of the rates collected between July 1, 1987, and December 28, 1987, which was commensurate with the decrease in GTE's corporate income taxes under federal legislation effective July 1, 1987.

The issue presented before the agency, in the district court, and on this appeal involves the interpretation of Iowa Code section 476.8A (1989), a statute enacted in 1987 specifically to cover adjustments to utility rates as a result of the effects of the Tax Reform Act of 1986. That federal legislation lowered the tax rates of utilities from forty-six percent to thirty-four percent. The Utilities Board relied on section 476.8A in ordering the refund which is challenged in this action. The district court interpreted this statute as sustaining the Utilities Board's order. We interpret this statute in a manner which does not sustain the Utilities Board's order. Consequently, we reverse the judgment of the district court.

Prior to the effective date of the Tax Reform Act of 1986, the Utilities Board sought to deal by administrative rule with potential revenue windfalls resulting to

regulated utilities under that legislation.[1] Perhaps due to the questionable propriety of single-issue rate adjustments, the Utilities Board also sought enabling legislation dealing specifically with this issue.[2] The statute which resulted from this effort provides:

The utilities board may require a rate-regulated investor-owned public utility to file revised rates to reflect the provisions of applicable state tax reform and the provisions of the federal Tax Reform Act of 1986. In lieu of filing revised rates to reflect the change in state and federal taxes, a public utility may file for a general rate change under section 476.6. If the public utility has not received board approval to collect the revised rates by July 1, 1987, the utility shall file a bond or other undertaking approved by the board conditioned upon the refund in a manner to be prescribed by the board of any amounts collected in excess of those amounts which would have been collected under the rates finally approved by the board. The utilities board shall adopt rules implementing this section.

A utility may delay implementation of the revised rates required by this section until September 30, 1987, if sufficient bond or corporate undertaking is approved and on file with the board. The bond or corporate undertaking shall be one and one-half times the estimated refund obligation accrued during the delay in implementing the revised rates. A utility having pledged a bond or corporate undertaking pursuant to this section may file for a general rate proceeding by September 30, 1987, with the historical test year ending June 30, 1987.

1987 Iowa Acts ch. 193, § 1.

Within the context of this legislation, GTE elected to file for a general rate change "in lieu of filing revised rates to reflect the change in state and federal taxes." On June 9, 1987, it filed a corporate undertaking conditioned upon the refund "of any amounts collected in excess of those amounts which would have been collected under the rates finally approved by the Board."

GTE's application for general rate change was filed with the Utilities Board on September 29, 1987. It contained both proposed interim and permanent tariffs. On December 18, 1987, GTE and the Office of the Consumer Advocate filed a stipulation which purported to resolve all issues with respect to GTE's proposed interim and permanent rates. The economic data included in this stipulation dealt with the effect of the Tax Reform Act of 1986 on the historical test year revenues. Pursuant to that stipulation, GTE filed a revised tariff on December 23, 1987. On December 28, 1987, the Utilities Board issued an order approving the stipulation and providing that

interim rates subject to refund will be set at the stipulated level and pursuant to Iowa Code section 476.6(13) (1987), shall be effective immediately, ... the tariff filed by GTE North, Inc., on December 23, 1987, [setting forth proposed permanent rates] shall become effective as final rates no longer subject to refund upon Board review and approval.

On January 14, 1988, the Utilities Board ordered that the tariff filed by GTE on December 23, 1987, "shall become effective as final rates no longer subject to refund."

On December 28, 1987, the same date that the stipulation of GTE and Consumer Advocate had been approved, the Utilities Board ordered GTE to file a refund plan for the period July 1, 1987, to December 28, 1987, on account of "delayed implementa-

---

1. These rules were discussed briefly in *Iowa Electric Light & Power Co. v. Utilities Board,* 442 N.W.2d 99, 100 (Iowa 1989). We noted in that case that the Board determined to address two groups of utilities separately, those with pending contested cases and those not involved in pending contested cases. The petitioner in the present case falls in the latter category. Legislation not discussed in the *Iowa Electric* case has superseded the agency rules. Consequently, the statute and not the administrative rules now governs GTE's obligation to reduce rates.

2. According to a stipulation filed in the district court proceeding by GTE, the Utilities Board, and the Office of Consumer Advocate, all three of these entities played an active role in proposing legislation on this issue.

tion of lower tax rates." GTE sought review of this order as agency action other than a contested case. Following a limited evidentiary hearing in which the intervenor, Office of Consumer Advocate, basically aligned itself with GTE's position, the district court upheld the Utilities Board's order.[3] Other facts which are material in deciding the appeal will be set forth and discussed in our consideration of the legal issues which are presented.

In applying section 476.8A to GTE's general rate change request, the Utilities Board concluded that the approval of a prospective rate increase effective December 28, 1987, did not eliminate the tax reform windfall experienced by GTE prior to the date the increased rate became effective. It was the theory of the Utilities Board that GTE's existing rates, approved prior to July 1, were conclusively presumed to be reasonable based on economic data available at the time the rates went into effect. From this premise, the Utilities Board reasoned that a presumptively correct rate based on a forty-six percent corporate income tax rate is a presumptively excessive rate based on a thirty-four percent corporate income tax rate.

GTE contends that the Utilities Board's economic theory is flawed and that, irrespective of economic theory, neither the language of section 476.8A nor the discernible object of that legislation allows a rate reduction order in the present case. In upholding the Utilities Board's order and rejecting GTE's contentions, the district court concluded that the effect of the tax reform act on GTE's revenues prior to December 28 "could not have been accounted for in the rate increase effective December 28, 1987." That court observed in this respect:

> [T]he Board determined that based on the facts stipulated by the parties, a prospective interim rate increase was reasonable. This decision, even though it is based on a test period in the past, cannot be construed as a conclusion that the

rates prior to the decision were unreasonably low.

■ We believe these observations by the district court are correct only to the extent that administrative findings concerning reasonableness of prospectively established rates do not ordinarily bear on the reasonableness of existing rates established on a different data base. This is a principle of rate regulation law rather than an observation of economic reality. We do not believe, however, that this principle is in any way determinative of the present dispute. It is the Utilities Board and not GTE which seeks to alter the established rate and thus runs afoul of the fixed rate doctrine.

■ In interpreting statutes, we may properly consider both the language of the act and the objects sought to be attained by the legislature. *Smith v. Linn County*, 342 N.W.2d 861, 863 (Iowa 1984); Iowa Code § 4.6(1) (1989). We have previously adhered to this rule of construction in utility rate cases. *Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 376 N.W.2d 878, 881 (Iowa 1985). Applying this rule of interpretation to the present case, we are convinced that the purpose of section 476.8A was to permit the Utilities Board to reduce existing utility rates, effective July 1, 1987, in only three situations. These situations are: (1) when the utility has voluntarily filed reduced rates based on the effect of the tax reform act; (2) when the utility has failed to file for a general rate change prior to September 30, 1987; or (3) when the utility did file for a general rate change before the latter date and the findings in the rate case revealed that its rates were unreasonably high as a result of the effect of the tax reform act.

■ Section 476.8A does not permit, and thus by implication prohibits, single-factor rate adjustments if it is determined in a general rate proceeding based on the June 30, 1987, test year that the existing rates are not unreasonable in the face of the tax

---

**3.** The intervenor, Office of Consumer Advocate, continues to subscribe to GTE's position on this appeal.

reform act. There are at least four aspects of the statute that convince us that this interpretation is correct. First, the "in lieu of" language suggests that a general rate filing is an alternative to a single-factor rate reduction. Second, the condition of the required bond or corporate undertaking is the refund of "any amounts collected in excess of those amounts which would have been collected under the rates finally approved by the board." Third, if a single-factor rate reduction is mandated irrespective of the results of the general rate proceeding, there would have been no reason for the legislature to defer the resulting refund or to have tied the period of delay to the pendency of the general rate case. Finally, to adopt the Utilities Board's contention would require single-factor rate reduction even though the consideration of all relevant economic factors indicates that no reduction is warranted.

For all of the reasons which we have discussed, we conclude that the district court erred in upholding the agency's refund order of December 28, 1987. The judgment of the district court and the final order of the agency are reversed. The case is remanded to the agency for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.