MERCY HOSPITAL MEDICAL
CENTER, Appellee,

v.

COUNTY OF MARION, Iowa, Appellant,

Martin Albert Kluge, County of Wood-
bury, Iowa, and Iowa Department
of Corrections, Defendants.

Iowa Orthopaedic Center, Appellee,

v.

County Of Marion, Iowa, Appellant,

Martin Albert Kluge, County Of Wood-
bury, Iowa, and Iowa Department
Of Corrections, Defendants.

No. 97–1268.

Supreme Court of Iowa.

Feb. 17, 1999.

Thomas J. Logan and Hugh J. Cain of
Hopkins & Huebner, P.C., Des Moines, for
appellant.

David B. Russell of Abendroth & Russell,
P.C., Urbandale, and Michael P. Mallaney of
Smith, Schneider, Stiles, Hudson, Serangeli,
Mallaney & Shindler, P.C., Des Moines, for
appellees.

Considered by HARRIS, P.J., LARSON, CARTER, NEUMAN, and TERNUS, JJ.

LARSON, Justice.

The issue on this appeal is whether Marion County must bear some of the costs of emergency medical care given to an Iowa Department of Corrections (DOC) inmate who had escaped from work release. The DOC settled with the plaintiffs by paying half of the medical costs, and the district court ruled that the county was liable for the remaining half. We reverse and remand.

## I. *Facts.*

Martin Kluge walked away from a DOC work-release program in O'Brien County, Iowa, on December 31, 1994. On January 20, 1995, he was seriously injured in a traffic accident in Marion County. The Marion County sheriff arrived first at the accident scene, followed by Nick Durian, a trooper with the Iowa State Highway Patrol. The sheriff soon had to leave, and trooper Durian was left in charge.

Kluge's injuries were determined to be life threatening, and department of public safety radio advised the trooper that Kluge had other problems as well: he was driving a stolen car, his driver's license was revoked, and the DOC was looking for him as an escapee. Under these circumstances, the trooper testified, he would ordinarily have taken Kluge to the Marion County jail. His injuries were too serious for that, however, so he was airlifted directly to Mercy Hospital Medical Center in Des Moines. Mercy and the Iowa Orthopaedic Center furnished the medical services for which they now seek payment.

On August 18, 1995, after Kluge had sufficiently recovered from his injuries, Woodbury County took him into custody for vehicle theft in that county. Eventually, Marion County also issued a warrant for Kluge's arrest for driving while his license was revoked and possessing a stolen vehicle. However, Kluge was not physically taken into custody in Marion County until October 4, 1995. The Marion County charges were dismissed on November 22, 1995, and Kluge remained in the custody of the DOC.

Mercy sued Kluge, the DOC, Woodbury County, and Marion County for $102,474.72. Iowa Orthopaedic Clinic filed a suit for $8435 against the same defendants, and the two cases were consolidated. The plaintiffs dismissed Woodbury County without prejudice, and they dismissed the DOC with prejudice after the DOC paid one-half of the bills. The plaintiffs continued to pursue Marion County. (Kluge is unable to pay the bills himself.)

The court granted Mercy's motion for summary judgment and ordered Marion County to pay the remaining half of Kluge's bills.

## II. *Standard of Review.*

■ We review a district court's granting of a summary judgment for errors at law. Iowa R.App. P. 4; *Sampson v. American Standard Ins. Co.*, 582 N.W.2d 146, 149 (Iowa 1998). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Ranney v. Parawax Co.*, 582 N.W.2d 152, 153 (Iowa 1998). The material facts in this case are not disputed, and the case may properly be resolved as a matter of law.

## III. *The Merits.*

■ Prisoners have a due process right to receive medical care when they are in the government's custody. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 245, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605, 611 (1983); *Smith v. Linn County*, 342 N.W.2d 861, 863 (Iowa 1984). Our statutes confirm that right. As to prisoners in a county jail, the Code provides:

> The keeper of each jail shall:
>
> . . . .
>
> 2. Furnish each prisoner with necessary bedding, clothing, towels, fuel, and medical aid.

Iowa Code § 356.5(2) (1995). The costs incurred must be paid by the county board of supervisors:

> All charges and expenses for the safekeeping and maintenance of prisoners shall

be allowed by the board of supervisors, except those committed or detained by the authority of the courts of the United States, in which case the United States must pay such expenses to the county, and those committed for violation of a city ordinance, in which case the city shall pay expenses to the county.

Iowa Code § 356.15.

The Code also imposes liability on the DOC for the care of prisoners under its custody:

The Iowa department of corrections is established to be responsible for the control, treatment, and rehabilitation of offenders committed under law to the following institutions:

. . . .

3. Iowa state penitentiary.

4. Iowa medical and classification center.

Iowa Code § 904.102.

Neither the Code nor any of our cases define prisoner for purposes of section 356.5(2). One dictionary defines a prisoner as "[a] person held under restraint; a person held under arrest or in prison." Webster's Third New International Dictionary 1804 (unab. ed. 1961). Another defines a prisoner as "[o]ne who is deprived of his liberty. One who is against his will kept in confinement or custody in a prison, penitentiary, or jail as a result of conviction of a crime." Black's Law Dictionary 1075 (5th ed. 1979).

*Miller v. County of Dickinson*, 68 Iowa 102, 26 N.W. 31 (1885), held that to be considered a prisoner under this statute a person need not actually be confined in the jail. In that case, the prisoner was injured during his arrest and because of his injuries could not be confined to jail. The sheriff arranged for a local resident to care for the prisoner, and we held the county liable for that care under the predecessor to section 356.5(2).

The sheriff did what any humane man was bound to do, and that is, have him taken care of, and furnished with such reasonable care and sustenance as his condition required. If this could be done in the jail, that was the proper place, but the evidence tends to show there was no jail. But if in fact there was, the sheriff was vested with a discretion in the premises, and there is no pretense that he acted in bad faith. . . . It no doubt will be conceded that if the sheriff makes an arrest he may confine the prisoner in jail pending the preliminary examination, and that he may during such time provide him with the necessaries of life at the expense of the county. In legal contemplation this is what the sheriff did, and he from the time of the arrest was responsible for the appearance at the preliminary examination of the prisoner, which in fact took place subsequently. . . . If the prisoner cannot be confined in jail, he must be somewhere else, and the county is responsible for necessaries furnished him, if the circumstances were such that the prisoner could not be confined in jail.

*Miller,* 68 Iowa at 104–05, 26 N.W. at 32.

In *Smith* we reaffirmed that principle:

Although the facts were disputed, substantial evidence supports the trial court's finding that *from the time of his arrest Smith was in the custody of the Linn County sheriff who would have housed him in the Linn County jail but for the seriousness of his injuries.* The legal issue we must decide is whether Smith or the county is primarily liable for the cost of his medical and hospital expenses under these circumstances.

342 N.W.2d at 862 (emphasis added). In *Smith* the prisoner sought reimbursement from the county for his own medical expenses. We denied it. *Id.* at 863.

■ Applying the language of section 356.5(2) and our cases, we conclude that a "prisoner" under that section means a person who (1) has been arrested, (2) is under the actual or constructive custody of a sheriff, and (3) is furnished services in a county jail or such alternative facility as may be required in order for the sheriff to comply with section 356.5(2).

### IV. *Application to the Facts.*

■ The plaintiffs contend that Kluge was effectively, although not formally, arrested at the accident scene, and he was therefore a prisoner; he would have been taken to jail if

it were not for his injuries. The investigating officer stated he considered Kluge to be arrested because of Kluge's unconsciousness and resulting inability to move, but there is no evidence that Kluge was arrested at the request of the sheriff.

Even if Kluge was actually under arrest, he was not a county prisoner under section 356.5 because the second requirement, custody in the sheriff, is lacking as a matter of law. Although the trooper testified that Kluge would have been taken to the jail had it not been for his injuries, the fact is he was not taken to the Marion County jail nor was he taken to a facility in lieu of jail at the direction of the sheriff. The sheriff exercised no control over him.

In this respect, this case is similar to the Wisconsin case of *LaCrosse Lutheran Hospital v. LaCrosse County,* 133 Wis.2d 335, 395 N.W.2d 612 (Ct.App.1986). In that case, the court considered a statute that provided for county liability for any prisoner transferred from a jail to a medical facility. The court said:

> The statutory language is plain. [It] applies only to prisoners who receive medical treatment and hospital care outside the jail after being transferred from a jail. A person who has not been jailed is not a prisoner within the meaning of [the statute].

*LaCrosse Lutheran Hosp.,* 395 N.W.2d at 613.

At the time of Kluge's accident, he was still in the legal custody of the DOC. Kenneth Burger, an administrative law judge with the DOC, was in charge of work release. His testimony was in the summary judgment record in the form of a deposition. Burger was informed immediately about the accident and about Kluge's injuries. The DOC, through Burger, immediately began to exercise its control over Kluge by attempting to have the emergency helicopter take Kluge to the University of Iowa Hospitals and Clinics instead of Mercy. Burger testified that he considered Kluge to be under the custody of the DOC at all times prior to, during, and following his escape. He testified that work-release escapees who need medical attention ordinarily receive it through the DOC. Sometimes services are provided through an indigent fund at the University of Iowa Hospitals and Clinics. If the inmate is unable to pay and other sources of payment such as the University of Iowa Indigent Fund are not available, the DOC pays, according to the evidence. In fact, from the time of escape until an inmate is returned to the institution, he is assumed by the DOC to be under its jurisdiction even though the inmate might be in the temporary physical custody of a sheriff or the state patrol.[1]

We conclude the county is not liable to these plaintiffs because Kluge was not in the custody of the sheriff, and therefore did not meet the definition of prisoner under section 356.5(2). We reverse and remand for dismissal of the plaintiffs' petition.

**REVERSED AND REMANDED.**

---

1. Although the parties do not discuss the application of Iowa Code section 904.908, we believe that statute confirms that custody and the resulting responsibility for the care of work-release violators is in the DOC, not the county. That statute provides:

> 1. Upon request by the Iowa department of corrections, the board of parole, or a judicial district department of correctional services, a county shall provide temporary confinement for alleged violators of work release conditions if space is available.

> 2. The Iowa department of corrections shall negotiate a reimbursement rate with each county for the temporary confinement of alleged violators of work release conditions who are in the custody of the director of the Iowa department of corrections or who are housed or supervised by the judicial district department of correctional services.... Payment shall be made upon submission of a voucher executed by the sheriff and approved by the director of the Iowa department of corrections.