**IOWA COMPREHENSIVE PETROLEUM UNDERGROUND STORAGE TANK FUND BOARD, Appellant,**

v.

**MOBIL OIL CORPORATION, Appellee.**

No. 98–914.

Supreme Court of Iowa.

Feb. 16, 2000.

Thomas J. Miller, Attorney General, David R. Sheridan and David S. Steward, Assistant Attorneys General, and John R. Perkins and John C. Conger of Pingel & Templer, P.C., West Des Moines, for appellant.

Robert V.P. Waterman, Jr. and Judith L. Herrmann of Lane & Waterman, Davenport, for appellee.

Peter Lehner, New York, New York, for amicus curiae Natural Resources Defense Council, Inc.

CADY, Justice.

The Iowa Comprehensive Petroleum Underground Storage Tank Fund Board appeals from a summary judgment entered by the district court finding Mobil Oil Corporation was not an "operator" under the Comprehensive Petroleum Underground Storage Tank Fund Act, Iowa Code chapter 455G (1997) (Tank Fund Act). We affirm the district court judgment.

## I. Background Facts and Proceedings.

Mobil owned a gas station in Boone, Iowa from 1952 to 1958. The gasoline was stored in an underground tank located on the property and dispensed to customers through pumps. In 1958, the station was purchased by Miller Oil Company. Over the years, Miller acquired and operated a total of nine service stations under the Mobil trademark.

Miller was known as a Mobil "jobber," or independent distributor of Mobil petroleum. Pursuant to a "Wholesale Distributor Agreement" with Mobil, Miller purchased gasoline from Mobil at Mobil's Omaha terminal and transported it in a truck to its customers, including its own station in Boone.

Under the distributorship agreement, Mobil had the ability to debrand or remove the familiar Mobil trademark and refuse to supply Mobil gasoline to a jobber station if the jobber placed a competitor's brand of petroleum in the tanks, or the jobber did not pay its bill. Additionally, the agreement dictated the geographic territory of jobbers and permitted Mobil to refuse to sell Mobil gasoline if the jobber's hoses, tanks, and connections were not maintained in a good and clean condition. Mobil also had the ability to request tests to be performed on the tank system, and a right to receive copies of any test results.

The distributorship agreement with Miller provided Mobil was not obligated to furnish or maintain any equipment, and required Miller to maintain the tank system in good condition. Miller did not operate the station as a franchisee, and Mobil did not have any ownership interest in the station.

A petroleum contamination was discovered at the Boone station in 1990. Miller applied to the Board for financial support under the Tank Fund Act to help clean the contamination. The Board approved the claim, paid and will continue to pay, up to the statutory limits, for the corrective action costs incurred at the site. *See* Iowa Code § 455G.9(1).

In 1997, the Board instituted this action against Mobil under the Tank Fund Act to recover the past and future corrective action costs. It alleged Mobil was liable for the cost as an "operator" of the Boone underground storage tank. The Tank Fund Act authorizes the Board to recover corrective action costs from "the owner, operator, or other potentially responsible party." *Id.* § 455G.13(1). Mobil moved for summary judgment. It claimed its status as a wholesale supplier of petroleum under a distributorship agreement was insufficient as a matter of law to make it an "operator" under the Tank Fund Act.

The trial court granted summary judgment. It interpreted the Tank Fund Act to exclude a wholesale supplier of petroleum who did not also participate in the daily operations of the underground storage tank, and found no facts to indicate Mobil participated in the daily operations of the tank.

The Board appealed. It claimed the Tank Fund Act must be broadly construed to include petroleum wholesalers who not only control the daily operation of the tank, but also have the ability to control the tank. It claims Mobil maintained the ability to control the tank at the Boone

station based upon its contractual authority to refuse to supply gasoline to Miller, and to debrand the station if a competitor's gasoline was placed in the tank or if Miller failed to pay its bill for gasoline purchased from Mobil.

## II. Scope of Review.

We review a ruling for summary judgment for errors of law. Iowa R.App. P. 4; *Kennedy v. Zimmermann*, 601 N.W.2d 61, 63 (Iowa 1999). Summary judgment is appropriate where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Mercy Hosp. Med. Ctr. v. County of Marion*, 590 N.W.2d 41, 42 (Iowa 1999). We view the facts in the light most favorable to the party opposing the motion for summary judgment. *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Federated Mut. Ins. Co.*, 596 N.W.2d 546, 550 (Iowa 1999).

## III. Mobil as an "Operator."

■ This case presents the same issue we addressed in *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp.*, 606 N.W.2d 359 (Iowa 2000) (*Mobil I*). In this case, however, there are facts not presented in *Mobil I* which require us to separately consider whether Mobil falls outside the definition of an "operator" as a matter of law.

In *Mobil I*, we found a wholesaler who merely had the ability to discontinue the supply of gasoline and debrand a station for placing another brand of gasoline in a tank or for failing to pay for the gasoline did not fall within the definition of an operator of the tank under the Tank Fund Act. In this case, not only did Mobil maintain the control identified in *Mobil I*, but the distributorship agreement identified additional grounds to refuse to deliver petroleum or debrand the station. These grounds included unclean tanks, hoses, and connectors. Furthermore, Mobil had the ability to request testing to be performed

on the tanks, hoses, and connectors, and was permitted to receive copies of the test results.

The distributorship agreement clearly gave Mobil additional grounds to terminate its relationship with the station, and to require testing of the tank systems. Yet, this type of control, as in *Mobil I*, does not relate to the daily operation of the tank system. Instead, the control relates to general quality assurance standards or expectations of performance necessary in the sale of brand name products to the public. Thus, the additional facts of this case do not amount to control over the daily operation of the tanks and are outside the scope of the Tank Fund Act.

The Board also argues Mobil was aware of the contamination and potential contamination from the underground storage tank during the time it owned and operated the gas station, but took systematic steps to insulate itself from the problem by establishing the jobber system. It argues Mobil should not be permitted to profit from creating the problem and escaping responsibility for the damage to the environment. This policy argument, however, is not derived from the language or history of our statute.

■ Our Tank Fund Act does not reveal an industry approach to the remediation of petroleum contamination. Instead, the legislature chose to tie liability for the recovery of corrective costs to the "control of" or "responsibility for" the "daily operation" of the tanks. If the legislature intended to impose liability on all suppliers of petroleum, including the major oil companies, it would not have limited liability to activities which the oil companies no longer pursue. We are required to construe our statutes to conform to the legislative intent, not a policy which was not within the collective judgment of our legislature. *See State v. Wagner*, 596 N.W.2d 83, 87 (Iowa 1999) (ascertaining legislative intent is goal in interpreting statutes, not impos-

ing what the court thinks the law should be).

## IV. Conclusion.

We agree with the district court that Mobil was not an operator under the Tank Fund Act as a matter of law. The type of control maintained by Mobil was insufficient to create liability.

**AFFIRMED.**

All justices concur except McGIVERIN, C.J. and LAVORATO, J., who take no part.