Judy **CARSON** d/b/a Savage Lumber Co., Appellant,

v.

Wesley G. **ROEDIGER** and Karen M. Roediger, Appellees,

and

**Carpetland U.S.A., Inc., Defendant.**

No. 93–271.

Supreme Court of Iowa.

March 23, 1994.

Jon M. McCright of Fisher, Ehrhart, McCright & Turner, Cedar Rapids, for appellant.

Gregory J. Epping of Terpstra, Terpstra & Epping, Cedar Rapids, for appellees Roedigers.

William J. Wimmer and David A. Bolte of Wasker, Dorr, Wimmer & Marcouiller, P.C., Des Moines, for amicus curiae Iowa Lumber Ass'n.

No appearance by Carpetland U.S.A.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

HARRIS, Justice.

In 1981 the legislature extensively amended Iowa statutes on mechanic's liens in order to ensure, according to the bill's preamble, "that the lien of a subcontractor is not enforceable ... except to the extent of the amount owed to the principal contractor at the time" of notice of the lien. 1981 Iowa Acts ch. 186. This dispute is within the familiar pattern in which the principal contractor fails in his obligations and the courts must decide who, as between the homeowner and a subcontractor, must suffer the loss. The trial court, under the special facts and in light of the 1981 legislation, assigned the loss to the subcontractor and we affirm.

In January of 1990 Wesley and Karen Roediger, the defendants, contracted with Larry Pinckney for the construction of a home for the set sum of $126,000. Plaintiff Judy Carson became a subcontractor by delivering construction materials to the site.

By reason of faulty construction by Pinckney, the Roedigers stopped payment under the contract in April of 1990. Pinckney also defaulted in payments to Carson. Carson then filed a mechanic's lien on the Roedigers' property in May, with notice served in June pursuant to Iowa Code section 572.14 (1989). Carson brought an action against the Roedigers to foreclose the lien. This action was consolidated for trial with another such claim by Carpetland USA. The Roedigers then cross-claimed against Pinckney for breach of contract. Pinckney failed to appear, resulting in a default judgment for the Roedigers.

The district court found that the contract price, with the extras ordered by the Roedigers, was $129,557. $108,731 of that total had been paid, so that $20,826 was due. The court found that the Roedigers had established that the cost for repairing defects in the construction and completing the home amounted to $25,235. This sum exceeded any remaining amount due under the contract with Pinckney. The court found that Carson's lien totaled $13,673. Because it found no amount due, the court held all mechanic's liens were canceled pursuant to its interpretation of Iowa Code section 572.-14(2).[1] The primary issue on the appeal is whether the district court correctly applied this statute. Carson appeals and Roedigers cross-appeal.

An action to enforce a mechanic's lien is in equity. Iowa Code § 572.26 (1993). The scope of review is therefore de novo. Iowa R.App.P. 4. We give weight to the district court's fact findings, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ A mechanic's lien is purely statutory in nature. *Gollehon, Schemmer & Assoc. v. Fairway–Bettendorf Assoc.*, 268 N.W.2d 200, 201 (Iowa 1978). All persons who furnish any material or labor for improvements to building or land will generally be entitled to a lien to secure payment for the labor and materials furnished. Iowa Code § 572.2.

Mechanic's liens stem from principles of equity which require paying for work done or materials delivered. 53 Am.Jur.2d *Mechanic's Liens* § 2, at 516 (1970). The doctrines of restitution and prevention of unjust enrichment drive the mechanic's lien entitlement. *Id.* The mechanic's lien statute is liberally construed to promote these objects and assist parties in obtaining justice. *Gollehon*, 286 N.W.2d at 201.

■ Under our statutory scheme, if a mechanic's lien is filed within ninety days of the date on which the last material or labor was furnished, a lien arises for the full amount regardless of the balance due on the general contract. Iowa Code § 572.11. There is an exception in the case of an owner-occupied dwelling; the most a subcontractor can recover in that situation is the balance due, regardless of whether notice is filed within ninety days. Iowa Code § 572.14(2).[2]

We analyzed the purposes of Iowa Code section 572.14 in *Louie's Floor Covering v. DePhillips Interests*, 378 N.W.2d 923 (Iowa 1985). There we noted that chapter 572 was extensively revised in 1981. *Id.* at 925; 1981 Iowa Acts ch. 186. This revision was intended to alleviate the "hardship when the principal contractor goes bankrupt or becomes defunct" after the owner has already paid some or all of the contract price. *See Louie's*, 378 N.W.2d at 927. We also approved language stating that "[i]f an innocent party must be hurt, the materialman is less favored than a homeowner because the materialman is far more sophisticated and familiar with the construction industry and better able to protect" his or her interests than is the homeowner. *Id.*

This case involved an owner-occupied dwelling. While we have never construed the "balance due" language in section 572.-14(2), we did consider identical language

---

1. Under Iowa Code § 572.14(2), as amended in the 1981 legislation we have mentioned, mechanic's liens on an owner-occupied dwelling are only enforceable "to the extent of the *balance due* from the owner to the principal contractor...." (Emphasis added.)

2. There is an exception to the exception. The subcontractors' recovery may exceed the balance due where the owner pays part or all of the contract price to the principal contractor after receiving notice of the lien. Iowa Code § 572.-16. No one contends this happened here.

found in section 572.11.[3]  *See Diecke v. Lumber Supply,* 260 Iowa 470, 149 N.W.2d 822 (1967).  In *Diecke,* we answered the identical question with reference to the ninety-day exception.  We held "that in determining the 'balance due' at time of service of such notice, any amounts needed to finish the work would be deducted from the balance due [on the contract]."  *Diecke,* 260 Iowa at 477, 149 N.W.2d at 826.  The district court relied on this analogous ruling in its interpretation of the balance due language in section 572.14(2) and its resulting denial of Carson's lien.

■  Carson vigorously contends the district court's reliance on *Diecke* was in error.  She notes that liens filed by the subcontractors in *Diecke* were untimely whereas Carson filed within the required period.  But we think it is appropriate to analyze the "balance due" language of the two sections together.  The fact that a subcontractor does or does not file a timely lien on an owner-occupied dwelling should not control the meaning of the term "balance due."  A rubric of statutory construction dictates that, when identical language is used in several places in a statute, the phrase is usually given the same meaning throughout.  *B.A.A. v. University of Iowa Hosp.,* 421 N.W.2d 118, 125 (Iowa 1988);  Iowa Code § 4.6(4) (court may consider "former statutory provisions, including laws upon the same or similar subjects").

Another section of chapter 572 reinforces this conclusion.  Subsection 16, "rule of construction," provides that "in the case of an owner-occupied dwelling, *nothing* in this chapter shall be construed to require the owner to pay a greater amount ... than is provided in the owner's contract with the principal contractor...."  Iowa Code § 572.16 (emphasis added).

■  Performance by the principal contractor, then, is crucial to the lien rights of a subcontractor.  Before a subcontractor can recover on a mechanic's lien, the subcontractor must prove the homeowner is indebted to the principal contractor for the work in which the subcontractor's materials were used.  *See*

*Kawneer Mfg. Co. v. Renfro & Lewis,* 186 Iowa 1344, 1347–48, 173 N.W. 899, 900 (1919);  *see also Central Iowa Grading v. UDE Corp.,* 392 N.W.2d 857, 859 (Iowa App.1986) (citing *Kawneer,* 186 Iowa at 1347–48, 173 N.W. at 900).

We have long recognized that, where a contractor abandons a project and the owner must pay to complete it, the owner is entitled to pay the costs of completion out of the balance remaining on the contract.  *L.A. Page & Son v. Grant,* 127 Iowa 249, 257, 103 N.W. 124, 127 (1905).  Subcontractors' liens are only valid to the extent of the contract price not paid after deduction of the owner's completion costs.  *Id.*  Computation of the balance due to subcontractors requires (1) deducting payments made by the owner from the contract price, (2) adding extras provided by the contractor, (3) then deducting the owner's damages from omissions and deficiencies in the contractor's work.  *See Wickham v. Monroe,* 89 Iowa 666, 669–70, 57 N.W. 434, 435 (1894).

A final reason for applying the *Diecke* holding to section 572.14(2) is its wording.  When the legislature enacted the "balance due" limitation for 572.14(2), it chose to adopt the exact language construed in our *Diecke* holding.

■  We conclude that the trial court correctly interpreted Iowa Code section 572.-14(2).  The term "balance due" in that section means the amount the owner is obligated to pay the principal contractor, and in computing that amount the deductions allowed by the trial court were correct.

■  III.  It is contended that the impact of the 1981 legislation should be carefully limited and should apply only in rare instances.  It is argued that subcontractors should not be at the mercy of petty dissatisfactions owners may have concerning work of the principal contractor.  This contention does not fit the facts of this record.  Petty dissatisfactions were not involved.  It is the rule that an owner is not allowed to nitpick until the balance due is depleted.  A deduction is

---

3.  Iowa Code § 572.11 provides that liens filed after ninety days "shall be enforced ... only to the extent of the *balance due* from the owner to

the contractor at the time of the ... notice."  (Emphasis added.)

to be allowed only where a breach is "substantial." *UDE Corp.*, 392 N.W.2d at 859.

 The trial court here correctly placed upon the Roedigers the burden of showing the exact extent of the principal contractor's default. The court took care that the "extras" in the construction project were added to the contract price originally agreed upon.

It is also contended that the challenged interpretation could result in high-handed practices by homeowners who could deceive subcontractors into intolerable losses. Again the contention does not fit this record. Carson was already on notice of other Pinckney defaults and nevertheless continued to have extensive and close dealing with Pinckney during the entire period. Carson even monitored Pinckney's separate business transactions, specifically a bank account into which at one time $22,746.91 was deposited from the sale of Roedigers' prior home. From this account, $10,000 was paid to Carson as "advance" on an unrelated account for which Carson had not yet provided any material. The parties dispute whether Pinckney was obligated or even free to pay all of or a part of Roedigers' deposit to satisfy the account with Carson. This is a matter we need not resolve here. It is mentioned only as a perfect example of why the legislature believed that those in the building industry are in a better position to protect their interests than are their customers.

IV. The only issue not mooted by what has been said is on Carson's claim that certain "extras" should be added to the contract price and a claim regarding interest. Carson believed the new trusses ordered by Pinckney were "extras" and should have been included in the trial court's calculation of contract price. The record does not indicate the trusses were "ordered" by Roedigers as extras. The first trusses, on the contrary, those replaced by the ones in controversy, were erroneously ordered by Pinckney and did not comply with the building contract. The district court correctly denied the increase in contract price.

Carson assails the district court's determination of the interest rate on the unpaid balance. Under the construction contract, unpaid balances were to accrue interest at ten percent from the date of possession. Roedigers took possession in late April of 1990. If allowed, this would increase the unpaid balance from $20,825.70 to about $29,-000.

 Pinckney was in default and owed the Roedigers $25,235.16 for costs arising from omissions and deficiencies under the contract. This default netted out the $20,825 due on the contract from the Roedigers. Pinckney could therefore not have gotten interest on the $20,825 due. Where a person is barred from recovering principal of a debt, the individual is equally barred from recovering interest on it. 47 C.J.S. *Interest or Usury* § 33, at 81 (1982).

**AFFIRMED ON APPEAL; CROSS-APPEAL RENDERED MOOT.**