**BAUMHOEFENER NURSERY, INC., Appellee,**

v.

**A & D PARTNERSHIP, II, Appellant.**

No. 98–1582.

Supreme Court of Iowa.

Oct. 11, 2000.

Timothy L. Gartin of Hastings & Gartin, Ames, for appellant.

David A. O'Brien and James W. Radig of White & Johnson, P.C., Cedar Rapids, for appellee.

NEUMAN, Justice.

This appeal and cross-appeal arise out of a mechanic's lien filed by plaintiff, Baumhoefener Nursery, Inc., for the labor and materials involved in digging up and

packaging 400 trees for delivery and installation at a Des Moines real estate development owned by defendant, A & D Partnership, II. The principal question on A & D's appeal is whether the labor and materials furnished by Baumhoefener are "lienable" under Iowa Code sections 572.1(2) and 572.2 (1997), as found by the district court. Baumhoefener's cross-appeal challenges the sufficiency of the district court's award of attorney fees. Finding no error in the district court's decisions, we affirm on both the appeal and cross-appeal and remand for entry of an award of appellate attorney fees.

## I. Background Facts and Proceedings.

A & D, through its agent, Keith Denner, contracted with Midwest L & I, Inc., for landscaping services. Midwest, in turn, subcontracted with Mike Nassif, a tree wholesaler, for the purchase and delivery of 400 trees. Nassif made arrangements to purchase the trees from a tree farm in Kalona, Iowa. Denner, along with a Midwest representative, traveled to the farm to personally select the desired trees. Nassif then contracted with Baumhoefener Nursery to dig up the trees, prepare the root balls for transport, and load them onto trucks headed for Des Moines.

John Baumhoefener described the mechanics of digging and preparing the trees. The lower branches of each tree were tied with twine so that the tree spade machine would fit around the plant. Each tree was dug individually, then hauled to the end of the row where an employee installed a wire basket and burlap sack to pack the root ball. Baumhoefener employees then loaded the 400 trees onto trucks.

The record reveals that Nassif charged Midwest $15,530 for the purchase and delivery of the trees to A & D's property in Des Moines. The wholesale cost of the trees was $3,882.50. A & D paid Midwest its landscaping fees, and Midwest paid Nassif in full. Nassif, however, did not pay Baumhoefener for the labor and materials performed under their contract. Nassif later declared bankruptcy.

Baumhoefener then commenced this action against A & D by filing a mechanic's lien for $12,589.70. There is no dispute under this record that the lien was perfected in accordance with Iowa Code section 572.8. It was filed within ninety days from the date on which "the last of the material was furnished or the last of the labor was performed." Iowa Code § 572.9.

The question urged by A & D at trial, and renewed on appeal, is whether Baumhoefener's services come within the scope of section 572.2, "Persons entitled to lien." The statute states:

> Every person who shall furnish any material or labor for, or perform any labor upon, any building or land for improvement, alteration, or repair thereof ... and those engaged in grading, sodding, installing nursery stock, landscaping, sidewalk building, fencing on any land or lot, by virtue of any contract with the owner, the owner's agent, trustee, contractor, or subcontractor shall have a lien upon such building or improvement, and land belonging to the owner on which the same is situated or upon the land or lot so graded, landscaped, fenced, or otherwise improved, altered, or repaired, to secure payment for material or labor furnished or labor performed.

Iowa Code § 572.2.

A & D argued at trial that the lien of section 572.2 was not intended to cover a sub–subcontractor in Baumhoefener's position. It claimed that Baumhoefener's services were remote from any actual improvement on the land, as evidenced by A & D's unawareness of Baumhoefener's work until confronted with the lien. Given the fact that Baumhoefener neither grew

the trees nor installed them in their new location, A & D argued, the nursery should not be permitted to avail itself of the lien statute's coverage for landscaping work.

The district court rejected A & D's contentions, summing up its conclusions this way:

> One simply cannot install 400 trees without digging those trees out of the ground, wrapping the root ball of those trees in burlap and wire mesh and delivering them to the installation site. Therefore, Plaintiff has a lien for labor performed and material furnished pursuant to Iowa Code section 572.2. The material furnished included burlap sacks, wire mesh, nails and ropes, all within the meaning of Iowa Code section 572.1(2).

In accordance with these findings, the district court granted the lien Baumhoefener sought, less deductions for fuel and freight costs not challenged on appeal. The resulting judgment, $10,264, was declared enforceable against A & D's real property, subject to foreclosure and judicial sale if not paid by a date certain. The court also awarded Baumhoefener $3500 in attorney fees. *See* Iowa Code § 572.32.

Further facts will be detailed as they pertain to the issues on appeal and cross-appeal.

## II. Scope of Review.

■ An action to enforce a mechanic's lien, triable in equity, is reviewed on appeal de novo. *Carson v. Roediger*, 513 N.W.2d 713, 715 (Iowa 1994). We are obliged to give weight to the district court's factual findings, but we are not bound by them. *Id.*

## III. Issues on Appeal.

A & D claims the district court's judgment was erroneous and must be reversed because Baumhoefener neither provided labor nor furnished materials entitling it to the protection of section 572.2. A & D also asserts that, to the extent the district

court enforced Baumhoefener's lien based on constructive notice to A & D that the trees were moved by *someone*, the judgment cannot stand because such knowledge would not justify a grant of equitable relief not otherwise available under the statute.

Baumhoefener counters that the labor it provided and packing materials it furnished contributed directly to the landscaping improvements enjoyed by A & D. On the question of constructive notice, Baumhoefener concedes such knowledge would not create a separate right to a mechanic's lien but claims the court committed no error in balancing the equities in its favor under this record.

■ ***A. Equitable Argument.*** We begin with the parties' second contention first. It is true that "[m]echanic's liens stem from principles of equity which require paying for work done or materials delivered." *Carson*, 513 N.W.2d at 715. But the lien itself is "purely statutory in nature," *id.*, dependent solely on statutory authority for its existence. *Gollehon, Schemmer & Assocs., Inc. v. Fairway–Bettendorf Assocs.*, 268 N.W.2d 200, 201 (Iowa 1978). An owner's knowledge of the existence of the subcontractor is essentially irrelevant. *Moffitt Bldg. Material Co. v. U.S. Lumber & Supply Co.*, 255 Iowa 765, 769, 124 N.W.2d 134, 137 (1963). "If the lien claim is filed within the time required the owner may settle with the chief contractor only at his peril." *Id.*

■ Applying these principles to the case before us, the question is not whether A & D knew (or should have known) about Baumhoefener's work or whether, in equity, A & D should stand Baumhoefener's loss. The question is whether Baumhoefener is one of the "persons entitled to lien" as that phrase is defined by section 572.2. For that answer we must turn to the statute itself.

■ ***B. Iowa's Mechanic's Lien Statute.*** Our goal in examining and interpreting any statute is to give effect to the

intent of the legislature. *Lockhart v. Cedar Rapids Community Sch. Dist.*, 577 N.W.2d 845, 847 (Iowa 1998). That intent is best demonstrated by the words used in the statute. *Id.*

■ Iowa's mechanic's lien statute is broadly written, authorizing a mechanic's lien for "every person" who furnishes material or labor for the improvement of buildings or land "by virtue of any contract with ... [the owner's] contractor *or subcontractor.*" Iowa Code § 572.2 (emphasis added). The statutory term "subcontractor" is likewise broadly written to include "*every person*" furnishing material or performing labor "upon any ... improvement," with the exception of persons contracting directly with the owner. Iowa Code § 572.1(5). By definition, Baumhoefener was a sub–subcontractor. It contracted with the subcontractor, Nassif, to provide labor and materials to prepare the trees for delivery to the landscaping contractor, Midwest L & I.

Not all states extend mechanic's lien protection to sub-subcontractors. *See generally* James McLoughlin, Annotation, *Right of Subcontractor's Subcontractor or Materialman, or of Materialman's Materialman, to Mechanic's Lien,* 24 A.L.R.4th 963, 972–74 (1983). But others, whose statutes are comparable to Iowa's, embrace second and even third-tier subcontractors within their mechanic's lien statutes' protective scope. *See id.* at 971–72, 974–75; *T.K. Kobayashi v. Meehleis Steel Co.,* 28 Colo.App. 327, 472 P.2d 724, 728 (1970) (sub–subcontractor constructing building components away from job site considered subcontractor under mechanic's lien law); *Hey Kiley Man, Inc. v. Azalea Gardens Apartments,* 333 So.2d 48, 50 (Fla.Dist.Ct.App.1976) (under statute, "subcontractor" includes "anyone not in privity with the owner performing a portion of a contract to enhance realty"); *A.Y. McDonald Mfg. Co. v. State Farm Mut. Auto. Ins. Co.,* 225 Ill.App.3d 851, 167 Ill. Dec. 354; 587 N.E.2d 623, 628 (1992) (holding *third-tier* subcontractor afforded lien

rights based on compliance with Mechanic's Lien Act); *see also Blue Tee Corp. v. CDI Contractors,* 247 Neb. 397, 529 N.W.2d 16, 20 (1995) (supplier to subcontractor entitled to protection under Nebraska Construction Lien Act); *Seaman v. Climate Control Corp.,* 181 Conn. 592, 436 A.2d 271, 274 (1980) (second-tier subcontractors "prima facie within ambit" of subrogation-based mechanic's lien law).

■ Although we have not previously considered the question, we see nothing in Iowa Code section 572.2 that would limit mechanic's lien protection to "first-tier" subcontractors. As both Florida and Illinois courts have observed, there appears no legal reason for arbitrary line-drawing based on degrees of remoteness from privity so long as the protective notice requirements of the statute are followed. *Hey Kiley Man, Inc.,* 333 So.2d at 50; *A.Y. McDonald,* 167 Ill.Dec. 354, 587 N.E.2d at 628. We agree. The crucial question, identified in our prior cases, is whether Baumhoefener's services improved the land upon which the lien purports to attach. *Gollehon,* 268 N.W.2d at 201.

The crux of A & D's claim is that neither the labor Baumhoefener performed, nor the packaging materials provided, were associated with A & D's property in Des Moines. A & D insists all labor was performed at the tree farm in Kalona, Iowa, and the packaging materials—though admittedly essential to successfully transporting the trees—lost their value "once the trees were placed in the ground." In essence, appellant argues, Baumhoefener's labor and materials were merely preparatory in nature and cannot be said to have "improved" the land as required by section 572.2. The district court rejected this argument, and so do we.

■ This court long ago suggested that off-site labor performed and materials furnished for delivery to a construction site may come within the ambit of our mechanic's lien statute. *A.E. Shorthill Co. v. Aetna Indem. Co.,* 124 N.W. 613 (Iowa

1910). The question in *Shorthill* was what the statutory term "furnish" means. We observed that it means more than providing materials that have "gone into" the improvement or property for which they are intended. *Id.* at 616–17. Preparatory labor and materials, if identified to the contract, qualify as well. *Id.* Our reasoning rested on the following quote from the Minnesota Supreme Court:

> In these days a large proportion of the material furnished for the construction of buildings, such as cut stone, inside finishing, etc., is prepared at the yard or shop of the contractor or manufacturer, in accordance with plans and specifications for particular buildings, with the implied consent of the owner, and which in many cases would be of comparatively little value for use elsewhere. Such work of preparation should be deemed part of the construction or 'furnishing' under the contract.

*Id.* (quoting *Howes v. Reliance Wire-Works Co.*, 46 Minn. 44, 47, 48 N.W. 448, 449 (1891)); *see also T.K. Kobayashi*, 472 P.2d at 728(fact that building components constructed off-site does not defeat lien for labor and materials); *Blue Tee Corp.*, 529 N.W.2d at 20 (off-site steel fabrication recognized as lienable labor where product unique and of no value unless incorporated into building).

 The record before us reveals without dispute that Baumhoefener employees performed the labor involved in digging and properly packaging 400 trees specifically identified to Nassif's contract with Midwest. Midwest in turn agreed to incorporate the trees in its landscaping contract with A & D. All agree that the plants would not have survived transplanting in Des Moines—that is, would not have improved A & D's land—without proper removal and packaging. Although A & D makes much of the fact that Baumhoefener did not *install* the trees at their final destination, we note that section 572.2 pertinently affords lien coverage for "labor *for*" an improvement as well as any "labor *upon*" the improved property. Moreover we are convinced that the preparatory materials used by Baumhoefener to secure the root balls fall within the general category of "forms, accessories, and equipment" listed among the landscaping resources included in the statutory definition of "material." *See* Iowa Code § 572.1(2).

In short, the labor provided and packing materials furnished by Baumhoefener contributed directly to the landscaping improvements enjoyed by A & D. Thus the district court correctly granted Baumhoefener judgment and the right to foreclosure on its timely filed mechanic's lien. No ground for reversal appears.

## IV. Cross–Appeal Issue: Attorney Fees.

 Iowa Code section 572.32 authorizes the district court to award reasonable attorney fees to the successful plaintiff in an action to enforce a mechanic's lien. The award is mandatory, *see* § 572.32, but the amount is vested in the district court's broad, but not unlimited, discretion. *Gabelmann v. NFO, Inc.*, 606 N.W.2d 339, 342 (Iowa 2000). "Reversal is warranted only when the court rests its discretionary ruling on grounds that are clearly unreasonable or untenable." *Id.*

 Baumhoefener's counsel submitted a statement of fees and costs totaling $5797.50. The bill included preparatory work on the file, as well as six and one-half hours of trial time, at the rate of $125 per hour. The record also reveals that, due to considerable turnover in counsel's office, three different attorneys had handled the matter over a period of two years. Opposing counsel argued this duplication of effort and expense should not be visited on his client. The district court agreed and, thereafter, entered a fee award of $3500.

Baumhoefener appeals the size of the court's award, claiming the complexity of the case, and the time spent in pursuing it, justifies an award of no less than $5000.

We think, however, that the court's explanation for paring the fee is neither unreasonable nor untenable. It was fair for the court to assume that turnover in counsel's office had, indeed, increased the fees in advance of trial. Moreover the size of the award is reasonable in relation to the difficulty of the case and results obtained. No abuse of discretion has been shown. *Cf. Gabelmann,* 606 N.W.2d at 344 (arbitrary reduction of fees from $29,000 to $3500 reversed on appeal).

 Having prevailed on appeal, Baumhoefener is entitled to an award of appellate attorney fees. *Id.* We therefore remand to the district court for entry of an additional judgment to compensate plaintiff for the reasonable expense of these appellate proceedings. Costs on appeal shall be shared equally by the parties.

**AFFIRMED ON APPEAL AND CROSS-APPEAL. REMANDED WITH INSTRUCTIONS.**

All justices concur except CADY, J., who takes no part.