# THE SUPREME COURT OF IOWA

No. 17–2009

Filed February 7, 2020

**STANDARD WATER CONTROL SYSTEMS, INC.,**

Appellee,

vs.

**MICHAEL D. JONES** and **CORI JONES,**

Appellants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MICHAEL D. JONES and CORI JONES,

Counterclaim Plaintiffs,

vs.

STANDARD WATER CONTROL SYSTEMS, INC.,

Counterclaim Defendant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

Homeowners appeal a district court order allowing a contractor to recover attorney fees against a homestead in an action to enforce a mechanic's lien. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

John F. Fatino, Jonathan Kramer, and Zachary J. Hermsen of Whitfield & Eddy, P.L.C., Des Moines, for appellants.

Jodie C. McDougal and Elizabeth R. Meyer of Davis Brown Law Firm, Des Moines, for appellee.

**MANSFIELD, Justice.**

**I. Introduction.**

Long-running litigation, like a species in the order lepidoptera, often goes through a metamorphosis. The difference is that the final stage of a legal metamorphosis is not a butterfly. Rather, as here, it is frequently a battle over attorney fees.

In June 2013, certain homeowners hired a contractor to waterproof their basement. After the contractor accidentally drilled into the house's water and sewer lines, which were in an unusual location, the homeowners refused to pay the contractor's bill. The contractor then sued to enforce a mechanic's lien.

After more than three years of litigation, including an appeal, it was ultimately determined that the homeowners had to pay all but $500 of the contractor's unpaid $5400 bill and that the contractor was entitled to foreclosure of its mechanic's lien.

This lawsuit is now in the last stage of its life cycle. The present dispute relates to the contractor's attorney fees, which now amount to over $58,000. Iowa law provides that "[i]n a court action to enforce a mechanic's lien, a prevailing plaintiff may be awarded reasonable attorney fees." Iowa Code § 572.32(1) (2013). But Iowa law also provides significant homestead rights. *See id.* ch. 561.

In March 2017, a revised decree was entered granting the contractor the right to foreclose a mechanic's lien against the property both for the principal amount due ($4900) and for the attorney fees ($58,000). Five months later, when a second sheriff's sale of the home was imminent, the homeowners for the first time asserted that including attorney fees in the mechanic's lien foreclosure decree violated their homestead rights. They maintained that the house was their homestead and could not be sold to

pay the contractor's attorney fees—or anything other than the $4900 principal amount due. That dispute forms the basis for the present appeal.

On our review, we conclude that in principle the homeowners are right: homestead rights generally prevail over a mechanic's lien for attorney fees. Neither the homestead law nor the mechanic's lien statute contain specific language to the contrary and in that event the homestead law must go first. *See* Iowa Code § 561.16. However, we also conclude that the homeowners' assertion of homestead rights in this case came too late. The homeowners needed to raise their homestead exemption *before* the district court entered a foreclosure decree recognizing that the contractor had a mechanic's lien for both the unpaid principal amount and attorney fees "senior and superior to any right, title or interest owned or claimed by" the homeowners—not *later* when the decree was being executed.

Accordingly, we affirm the district court judgment that found a waiver by the homeowners. We also affirm in part and vacate in part the decision of the court of appeals.

**II. Facts and Procedural Background.**

**A. The Waterproofing Contract between the Joneses and Standard Water.** In June 2013, Michael and Cori Jones (the Joneses) hired Standard Water Control Systems (Standard Water) to install a waterproofing system in the basement of their two-bedroom, one-story home located in Des Moines.[1] The parties' written contract called for installation of drainage pipe and tile and a sump pump, and removal and replacement of the existing concrete. The contract price was $6000, of which the Joneses paid $600 down.

---

[1]Michael Jones had inherited the house. The Joneses did not move into the house until months after Standard Water did the waterproofing work.

The contract provided that Standard Water would "not be responsible for any damage to hidden or unknown installations under the floor." It also provided that "any person or company supplying labor or materials for this improvement to your property may file a lien against your property if that person or company is not paid for the contributions." Lastly, it stated that

> if any type of collection action is brought against the Owner to collect any portion of Contractor's fee, the Owner shall be liable for the Contractor's actual attorney's fees and costs of collection, in addition to any balance due under this Agreement.

**B. The Beginning of the Parties' Dispute.** During the course of this work on July 15, one of Standard Water's employees drilled through the home's water and sewer lines. These lines were unexpectedly buried within the concrete basement floor. Standard Water informed the Joneses a plumber would need to repair the breaks before they could complete their work. Standard Water had finished ninety-five percent of the job at that point. It left behind materials to complete the remaining five percent of the work once the repair was made. Standard Water also left behind an invoice for the $5400 due on completion of the work. The invoice stated that interest of twelve percent per annum would be charged on past-due balances. Standard Water promised to return to the house and complete the waterproofing system once the Joneses repaired the water and sewer lines.

The Joneses did not have the water and sewer lines repaired for approximately two months, did not allow Standard Water to complete the waterproofing work, and did not pay Standard Water's $5400 bill. Standard Water posted a mechanic's lien to the lien registry on July 31. On September 10, the Joneses had a plumber repair the water and sewer

lines and perform other plumbing work to make the house code-compliant. On October 1, the Joneses' counsel made demand on Standard Water to foreclose its mechanic's lien pursuant to Iowa Code section 572.28. On October 30, Standard Water filed a petition to foreclose the lien in the Polk County District Court.

**C. The First Round of District Court Litigation.** Thus began the long and winding procedural history of this litigation. A trial to the district court was held on August 18 and 19, 2014. At the conclusion, the court found that Standard Water had substantially completed the waterproofing job on July 15, 2013, that the presence of the water and sewer lines encased in the concrete basement floor was unusual and not foreseeable, and that Standard Water had exercised due care in performing its work. The court concluded Standard Water was entitled to judgment for $5400 plus interest at twelve percent from July 15, assuming it was allowed by the Joneses to complete the work. If not, the judgment amount would be reduced by $500 from $5400 to $4900. In a supplemental order, the court awarded $43,835.25 in attorney fees, pursuant to Iowa Code section 572.32 and the parties' contract, and $299.04 in costs. Final judgment was entered on February 16, 2015, in person against the Joneses and in rem against the Joneses' home. The in rem portion of the judgment stated,

> Standard is entitled to foreclosure of its mechanic's lien dated July 31, 2013 . . . on the single family dwelling owned by the Joneses with a . . . locally known address of 2910 Mahaska Ave., Des Moines, Polk County, Iowa 50317 ("Property"); . . . Standard is entitled to an *in rem* judgment and a foreclosure of the Mechanics' Lien in the full and total amount of the aforementioned monetary judgment, together with all accruing interest, costs and fees; and . . . the Mechanic's Lien is a valid lien and is the senior lien against the Property, being senior and superior to any right, title or interest owned or claimed by any of the Defendants.

**D. The First Appeal.** The Joneses appealed.[2] They argued that Standard Water had failed to post a notice of commencement of work to the lien registry within ten days of the commencement of work as required by Iowa Code section 572.13A. They also argued that the contract provision authorizing an award of attorney fees to Standard Water was not enforceable. Lastly, they urged that the amount of attorney fees was excessive. The case was transferred to the court of appeals, which on August 31, 2016, upheld the judgment except for the amount of fees. *Standard Water Control Sys., Inc. v. Jones*, 888 N.W.2d 673, 679 (Iowa Ct. App. 2016). The court noted that the fees "exceeded 800% of the underlying judgment" and that the district court had "underemphasized the time *necessarily* spent on this matter given the limited amount at issue and the limited factual issue presented." *Id.* The court affirmed the judgment in part and remanded "for additional fact-finding to determine an [attorney fee] award consistent with the facts presented in this case and the *Schaffer* [*v. Frank Moyer Construction, Inc.*, 628 N.W.2d 11, 24 (Iowa 2001)] factors." *Id.* We denied the Joneses' application for further review.

**E. The First Sheriff's Sale—and the Setting Aside of that Sale.** In the meantime, Standard Water had arranged for a special execution on its judgment and had caused the home to be sold at a sheriff's sale on October 21, 2015. At the sale, Standard Water was the winning bidder for $45,000.

Following the court of appeals decision, the Joneses moved immediately to set aside the sheriff's sale. On September 28, 2016, while the Joneses' application for further review in our court was still pending and procedendo had not yet issued, the district court set aside the sale.

---

[2]The Joneses also elected not to permit Standard Water to complete the project, leading to a $500 reduction in the principal amount of the judgment.

The district court noted that Standard Water "will not be prejudiced" because it "still retain[s] a judgment against the property."

**F. The Second Round of District Court Litigation.** On March 24, 2017, the district court entered an order reducing Standard Water's district court attorney fees by $2165, but awarding an additional $17,283.44 for appellate attorney fees.[3] Hence, the revised judgment amounted to $41,670.25 in trial attorney fees and $17,283.44 in appellate

---

[3]Standard Water had requested $29,144 for the appeal. In justifying the overall fee award, the district court explained,

> [W]hile this [s]hould have been a "run-of-the-mill" mechanic's lien foreclosure, the Jones escalated the stakes and caused much of the expended legal services by the positions they took in the case. They asserted that Standard failed to properly perform when they struck and cut the water line in their home. The court disagreed. They argued that Standard breached its duty by not discovering the water line before it was cut. The Jones' plumber testified that no plumber would anticipate the water line to be located where it was in the Jones' house. The Jones demanded and sought over $11,000.00 in damages against Standard and they received nothing on this claim. The case because of the positions asserted by the Jones and the legal interpretation required of the amended mechanic's lien statute caused this case to be anything but a "run-of-the-mill" foreclosure of a mechanic's lien.

> . . . .

> The court recognizes the attorney fees awarded for services provided through trial are substantially greater than the monetary award Standard received. However, the Jones forced this litigation when they demanded Standard foreclose on the mechanic's lien. They escalated the stakes in the case when they asserted a counterclaim against Standard for an amount twice the amount sought by Standard. They interpreted and argued that certain sections of the Iowa Code that if they prevailed, would have precluded Standard's recovery here. They filed a motion for partial summary judgment in an attempt to convince the district court their interpretation of the Iowa Code was correct.

> Standard was forced to respond. The response provided was reasonable and necessary, as limited by this order. Standard presented the appropriate lay and expert witnesses to prove their case and rebut the Jones. They, likewise, responded appropriately and reasonably to issues set forth in the pre-trial motions filed by the Jones.

attorney fees against the Joneses. The court also reduced the Joneses' redemption period on a future sale from one year to ninety days.

The Joneses filed a motion to enlarge and amend the judgment and a motion to reopen the record. The court denied these motions on May 9. The Joneses launched their second appeal, contending the new total of $58,953.69 in fees was excessive.

**G. The Second Sheriff's Sale and the Joneses' Assertion of the Homestead Exemption.** Standard Water began the sheriff sale process anew while the Joneses' second appeal went forward. A sheriff's sale was again scheduled—this time for August 22, 2017. On August 10, less than two weeks before the sale date, the Joneses filed a motion to vacate the writ of special execution, asserting *for the first time* that the house was their homestead and could not be sold to pay attorney fees, interest, or costs, but only the principal amount of the judgment itself. The Joneses argued the sale should not go forward, but if it did, they should be able to redeem their home for $4900—i.e., the principal amount.

On August 21, the court denied the motion to vacate the special execution and allowed the sale to go forward. In its order, the court reserved a later determination as to whether the house was the Joneses' homestead and—if so—whether the lien amount could include attorney fees, costs, and interest.

Standard Water again purchased the home at the August 22, 2017 sale for $45,000. In a November 12 postsale order, the district court addressed the issues it had reserved. By then, the parties had agreed that the house was in fact the Joneses' homestead, so the court turned to the other issues.[4] The court held that "[Iowa Code] section 561.21(3) does not

---

[4]The homestead declaration and plat were recorded August 21, 2017, the day before the second sheriff's sale. In addition, the Joneses filed affidavits dated August 22

allow a homestead to be sold to recover attorney fees, costs of the action or interest that may have been entered as a judgment against the home in [a] foreclosure action under chapter 572." However, the court observed that the Joneses did not raise their homestead claim until 2017. The court also observed that the Joneses had successfully moved to set aside the first sheriff's sale based on the premise that attorney fees were part of the lien. Accordingly, for reasons of judicial estoppel, law of the case, and res judicata, the court declined to set aside the August 22 sale. On November 17, the Joneses redeemed the house by tendering $45,300 to the Polk County district court clerk.

The Joneses appealed a third time, arguing the district court erred in finding they were barred by estoppel, waiver, and res judicata from asserting their homestead rights against the lien for attorney fees, costs, and interest.

**H. The Second Appeal.** Simultaneously, the Joneses' second appeal, which challenged the revised amount of attorney fees awarded, was still proceeding. We transferred that appeal to the court of appeals. On February 7, 2018, the court of appeals rejected the Joneses' contention that the fees were excessive, upholding the total award of $58,953.69 but declining to award any attorney fees for that appeal. *Standard Water Control Sys., Inc. v. Jones*, No. 17–0854, 2018 WL 739330, at *3 (Iowa Ct. App. Feb. 7, 2018).

**I. The Present Appeal.** The Joneses' third appeal was also transferred to the court of appeals. On February 9, 2019, that court upheld the district court's ruling that the "[Iowa Code] does not allow a

---

stating that the property was their homestead. The record does not show exactly when the property became the Joneses' homestead, although it suggests they moved into the house in 2014.

homestead to be sold to recover attorney fees, costs of the action or interest that may have been entered as a judgment against the home in a foreclosure action under chapter 572." But it overturned the district court's ruling that principles of judicial estoppel, waiver, and res judicata barred the present consideration of the Joneses' homestead arguments. *Standard Water Control Sys., Inc. v. Jones*, No. 17–2009, 2019 WL 478498, at *7 (Iowa Ct. App. Feb. 6, 2019).

Standard Water applied for, and we granted, further review.

### III. Standard of Review.

We review questions of statutory interpretation for correction of errors at law. *Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 476 (Iowa 2018). We review questions of res judicata for corrections of errors at law. *Tyson Foods*, 740 N.W.2d at 195.

### IV. Analysis.

**A. Can Attorney Fees, Costs and Interest Be Recovered in a Mechanic's Lien Foreclosure Action Against the Homestead?** This case involves the intersection of two chapters in the Iowa Code—chapter 561 concerning homesteads and chapter 572 concerning mechanic's liens. Iowa Code section 561.16 provides that "[t]he homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." Iowa Code § 561.16. Section 561.21 provides,

> The homestead may be sold to satisfy debts of each of the following classes:
>
> . . . .
>
> 3. Those incurred for work done or material furnished exclusively for the improvement of the homestead.

*Id.* § 561.21(3). Meanwhile, Iowa Code section 572.32 provides, "In a court action to enforce a mechanic's lien, a prevailing plaintiff may be awarded

reasonable attorney fees." *Id.* § 572.32(1). No one disputes at this point that Standard Water can recover its principal amount due of $4900 by foreclosing on the Joneses' homestead. This represents "work done or material furnished exclusively for the improvement of the homestead." *Id.* § 561.21(3). The question is whether Standard Water can also recover its attorney fees, interest, and costs by foreclosing on the homestead.

Iowa has a long history of protecting the homestead. In 1854, we considered *Bridgman v. Wilcut*, 4 Greene 563 (Iowa 1854), our first case involving Iowa's homestead statute. In that case, we found a debtor was entitled to protect his home from sale under an 1849 statute protecting homesteads from "forced sale." *Id.* at 566. Thus, less than three years after Iowa became a state, our legislature had already passed a statute protecting the homestead.

By 1928, we observed that "exemption statutes are to be construed liberally in favor of the debtor." *Berner v. Dellinger*, 206 Iowa 1382, 1385, 222 N.W. 370, 372 (1928). In 1934, we considered whether a homeowner who wanted to redeem her home that had been foreclosed in a mechanic's lien action could be required to pay the lienor's $250 in attorney fees. *See Werner v. Hammill*, 219 Iowa 314, 316, 257 N.W. 792, 793 (1934). We held that the homeowner could not be required to pay the fees. *Id.* at 317–18, 257 N.W. at 794. Although there was no statute in effect comparable to Iowa Code section 572.32 at the time, and, in fact, no one furnished a reason why the homeowner should have to pay the lienor's fees, *id.* at 316, 257 N.W. at 793–94, this case does form part of our historical backdrop.

In 2014, we reaffirmed that "we construe our homestead statute broadly and liberally to favor homestead owners" because the legislative scheme strongly favors the homestead. *In re Estate of Waterman*, 847 N.W.2d 560, 567 (Iowa 2014) ("The general assembly has 'chosen to

provide special procedures to protect homestead rights, and has defined this protection in a comprehensive manner.' " (quoting *Martin v. Martin*, 720 N.W.2d 732, 738 (Iowa 2006)). Moreover, the homestead statute exists "to provide a margin of safety to the family, not only for the benefit of the family, but for the public welfare and social benefit which accrues to the State by having families secure in their homes." *Id.* at 566–67 (quoting *Brown v. Vonnahme*, 343 N.W.2d 445, 451 (Iowa 1984)); *see also Am. Sav. Bank of Marengo v. Willenbrock*, 209 Iowa 250, 253, 228 N.W. 295, 297 (1929) ("The law allowing the exemption is to be liberally construed, and is not to be pared away by construction, so as to defeat its beneficent, sociological, and economic purpose.").

However, the mechanic's lien also has an important and longstanding status in Iowa. The territory of Iowa already had a mechanic's lien law by 1843, and some form of the lien has existed ever since. *Colcord v. Funk*, Morris 178, 179, 1843 WL 1195, at *1 (Iowa 1843) (per curiam); *see also Schaffer*, 628 N.W.2d at 19; *Greene & Bros. v. Ely*, 2 Greene 508, 508 (Iowa 1850). In *Schaffer*, we noted the mechanic's lien statute stems "from principles of equity which require paying for work done or materials delivered." 628 N.W.2d at 19 (quoting *Carson v. Roediger*, 513 N.W.2d 713, 715 (Iowa 1994)). Considerations of "restitution and prevention of unjust enrichment drive the mechanic's lien entitlement." *Id.* (quoting *Carson*, 513 N.W.2d at 715). Therefore, we liberally construe the mechanic's lien statute. *Id.*; *see also Winger Contracting Co. v. Cargill, Inc.*, 926 N.W.2d 526, 535 (Iowa 2019) ("The mechanic's lien statute is liberally construed to promote restitution, prevent unjust enrichment, and assist the parties in obtaining justice.").

Additionally, in 1983, the legislature amended the mechanic's lien statute to allow for the recovery of attorney fees in mechanic's lien actions.

1983 Iowa Acts ch. 106, § 1 (codified as amended at Iowa Code § 572.32 (2020)). "Typically, courts generously construe statutes authorizing an award of fees to a prevailing party." *Lee v. State*, 874 N.W.2d 631, 645 (Iowa 2016).

Although we have not previously addressed the interplay between the homestead law and Iowa Code section 572.32, we have had to resolve other tensions between the homestead law and separate provisions of the Iowa Code. Thus, in *In re Property Seized from Bly*, we were presented with the question "whether a legitimately acquired homestead may be forfeited to the State under Iowa Code chapter 809 . . . when it has been used by its owner to facilitate the commission of a criminal offense." 456 N.W.2d 195, 196 (Iowa 1990). The forfeiture statute expressly provided that property used to facilitate the commission of a criminal offense was forfeitable. *Id.* Yet we noted that Iowa Code section 561.16 required a "special declaration," and "neither the homestead exemption nor chapter 561 is mentioned anywhere in [the statutory definition of forfeitable property or the chapter of the Iowa Code devoted to forfeiture]." *Id.* at 200. In summary, we said,

> In light of the legislature's choice not to refer to the homestead law in chapter 809, we conclude that the current Iowa statutes do not permit the State to forfeit a legitimately acquired homestead under section 809.1(2)(b) even though the homestead was used by its owner to facilitate the commission of a criminal offense.

*Id.*

Under the *Bly* standard for what amounts to a "special declaration," Iowa Code section 572.32 falls short. It too does not mention the homestead exemption.

One possible counterargument to *Bly* is that a "special declaration" is unnecessary here because the exception for debts "incurred for work

done or material furnished exclusively for the improvement of the homestead" *already includes* attorney fees incurred enforcing those debts. *See* Iowa Code § 561.21(3) (2013) (stating that the homestead may be sold to satisfy debts "incurred for work done or material furnished exclusively for the improvement of the homestead"). We are not persuaded by that argument. The language in section 561.21(3) resembles the language at the beginning of the mechanic's lien chapter in section 572.2(1). *See id.* § 572.2 (stating that the lien is "to secure payment for the material for labor furnished or labor performed"). Yet that language did not authorize recovery of attorney fees until section 572.32 was added in 1983. Attorney fees are not a debt incurred for work done or material furnished. They are a debt incurred for *collecting* a debt for work done or material furnished.[5]

Still, a number of Iowa cases have found that specific statutory provisions trump the homestead exemption even when they do not mention it. An example can be found in tax law. *See Tate v. Madison County*, 163 Iowa 170, 171, 143 N.W. 492, 492 (1913). *Tate* concerned a statute declaring "taxes due from any person upon personal property shall be a lien upon any and all real estate owned by such person." *Id.* (quoting Iowa Code § 1400 (Supp. 1907)). Our court found "any and all real estate" included homesteads, making taxes enforceable against them, including taxes not specifically due on the homestead. *Id.* at 172, 143 N.W. at 492. We reaffirmed that conclusion in *Hampe v. Philipp*, 210 Iowa 1243, 1244, 232 N.W. 648, 649 (1930).[6]

---

[5]*See also Palomita, Inc. v. Medley*, 747 S.W.2d 575, 577–78 (Tex. App. 1988) (holding that a Texas law authorizing recovery of attorney fees by a mechanic's lienholder who recovers in a suit on the lien does not permit the fees to be included in the lien, because the lien "secures payment for . . . the labor done or material furnished for the construction or repair" under Texas law (quoting Tex. Prop. Code Ann. § 53.023)).

[6]The relevant statute now reads, "[E]xcept that no property of the taxpayer is exempt from payment of the tax." Iowa Code § 422.26(7)(*a*) (2020).

Even without the benefit of "any and all real estate" language, we held in *Cox v. Waudby* that a married couple could not shield a home they had purchased with fraudulently obtained proceeds from an equitable lien. 433 N.W.2d 716, 718–19 (Iowa 1988). We explained,

> Although exemption statutes are to be liberally construed in favor of the debtor, our construction must not extend the debtor privileges not intended by the legislature. We conclude the legislature never contemplated or intended that a homestead interest could be created or maintained with wrongfully appropriated property. Where wrongfully obtained funds are used to purchase property, the property does not belong to the purchasers, and therefore, to the extent of the illegal funds used, they never acquire a homestead interest.

*Id.* at 719 (citations omitted).

And in *In re Marriage of Tierney*, we held that Iowa Code section 561.16 did not bar a dissolution decree from directing that the family homestead be sold, even though nothing in Iowa Code section 598.21 expressly mentioned homestead. 263 N.W.2d 533, 534–35 (Iowa 1978). We observed, "Our cases have long recognized that § 598.21 constitutes a 'special declaration of statute' which makes homestead laws ineffective to bar judicial sale of the homestead in adjusting the property rights of the parties." *Id.* at 534.

Additionally, a homestead may be subjected to an involuntary partition sale despite the absence of any reference to homestead in the partition statutes or rules. *See Coyle v. Kujaczynski*, 759 N.W.2d 637, 641 (Iowa Ct. App. 2008). As the court of appeals explained in *Coyle*,

> [T]he legislature, in providing for homestead protection, never contemplated or intended that a homestead interest could be created or maintained against other co-owners of the property. Rather, the legislature merely sought to put homesteads beyond the reach of creditors.

*Id.*

We think *Bly* controls as to whether attorney fees can be recovered against the homestead in an action to foreclose a mechanic's lien. Iowa Code section 572.32, like the criminal forfeiture law in *Bly* and unlike the laws governing divorce, partition, and taxes in *Tierney*, *Coyle*, and *Tate*, is a relatively recent progeny of the legislative process. The legislature did not elect to make a "special declaration" regarding the unavailability of the homestead exemption in 1983 when it enacted section 572.32. Accordingly, we conclude the homestead exemption prohibits efforts to recover attorney fees in mechanic's lien foreclosure actions. We do not believe we are extending to the debtors in this case a privilege "never contemplated or intended" by the legislature. *Cox*, 433 N.W.2d at 719. When the legislature wants to create a new remedy intended to supersede the homestead exemption, section 561.16 puts the burden on the legislature to make a "special declaration" saying so.

Our conclusion also finds support in Iowa Code section 4.7, which states,

> If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision.

Iowa Code § 4.7 (2020). If we line up Iowa Code sections 561.16 and 561.21, on the one hand, and Iowa Code section 572.32, on the other, the latter mentions *only* a remedy. The homestead provisions, however, mention *both* an exemption *and* remedies to which the exemption does not apply. Hence, the relevant homestead provisions appear to be more specific.

We note that Texas law, like Iowa law, expressly authorizes the recovery of attorney fees in a mechanic's lien foreclosure action. *See* Tex.

Prop. Code Ann. § 53.156 (West, Westlaw through 2019 Legis. Sess.). Yet a Texas appellate court held that attorney fees could not be paid from homestead sale proceeds. *See Dossman v. Nat'l Loan Investors, L.P.*, 845 S.W.2d 384, 386–87 (Tex. App. 1992).

There are reasonable policy reasons to reach this result. When a dispute arises between a homeowner and a residential contractor, it is conceivable that the contractor's attorney fees could far exceed the underlying amount in dispute. That is exactly what happened here. In that circumstance, the legislature may not have wanted to put the home in jeopardy for such amounts. On the other hand, given that construction litigation can be costly and protracted, the legislature may have decided that for nonhomesteads the contractor should be compensated for its actual litigation cost when the owner is in the wrong—especially when attorney fees are less likely to be disproportionate to the amount in controversy.

Yet the matter is not without doubt. A 1919 precedent, not cited by either party, supports Standard Water's position. *See Chandler v. Hopson*, 188 Iowa 281, 175 N.W. 62 (1919). In *Chandler*, we upheld a judgment for the defendant in a proceeding to fix the boundary line between two properties. *Id.* at 288–89, 175 N.W. at 64. We also held that the district court did not err in making the costs a lien on the plaintiff's property, even though it was his homestead. *Id.* at 289, 175 N.W. at 64–65. We noted that Iowa Code section 4238, now section 650.16, provided,

> The costs in the proceeding shall be taxed as the court shall think just, and shall be a lien on the land or interest therein owned by the party or parties against whom they are taxed, so far as such land is involved in the proceedings.

*Id.* at 289, 175 N.W. at 65 (quoting Iowa Code § 4238 (1897) (current version available at Iowa Code § 650.16 (2020))). However, we then quoted

from Iowa Code section 2972, which is now section 561.16. *Id.* We concluded,

> This section [section 2972, now section 561.16] was enacted prior to section 4238 [now section 650.16]. It will be noted that by section 2972 the homestead is exempt from judicial sale only "when there is no special declaration of statute to the contrary." Section 4238 expressly makes any judgment for costs a lien upon the land involved in the proceedings.
>
> We are of opinion that the decree of the district court is right.

*Id.* (quoting Iowa Code § 2972 (1897) (current version available at Iowa Code § 561.16 (2020))). In short, even though section 4238 did not mention homestead rights, the express authority granted in that area of the Iowa Code to make the costs a lien on the land was deemed a "special declaration" sufficient to overcome the homestead. *Bly* seems to be to the contrary and requires the legislature "to refer to the homestead law." 456 N.W.2d at 200.

In any event, as to interest and taxable costs here, we hold that they can be included in a mechanic's lien against a homestead. Unlike attorney fees, interest and costs have traditionally been recoverable in mechanic's lien actions and in litigation generally. We believe that interest is part of the "debt[] . . . incurred for work done or material furnished exclusively for the improvement of the homestead." Iowa Code § 561.21(3) (2013). Limiting an unpaid contractor to recovery of its principal amount from the homestead no matter how long it took to foreclose the lien would encourage delay on the part of the homeowner and was "never contemplated or intended" by the legislature. *Cox*, 433 N.W.2d at 719.

Our prior cases have allowed interest and costs in mechanic's lien judgments. *See Farrington v. Freeman*, 251 Iowa 18, 24–25, 99 N.W.2d 388, 391–92 (1959); *Moffitt v. Denniston & Partridge Co.*, 229 Iowa 570,

571–72, 576, 294 N.W. 731, 731, 734 (1940). In *Moffitt*, we affirmed a mechanic's lien judgment including interest and costs and allowed it to be enforced against a homestead on the basis of the predecessor to section 561.21(3). 229 Iowa at 571–72, 576, 294 N.W.2d at 731, 734. In fairness, whether interest and costs could be included in the judgment was not presented as a distinct issue in *Moffitt*. *Id.* at 571–76, 294 N.W. at 731–34. In *Farrington*, we held that a contractor was entitled to interest in an action for foreclosure of a mechanic's lien. 251 Iowa at 23–26, 99 N.W.2d at 391–93. Whether the property was a homestead was not discussed, although the defendants had occupied it as their home. *Id.* at 22–23, 99 N.W.2d at 389. *See also S. Hanson Lumber Co. v. DeMoss*, 253 Iowa 204, 212, 111 N.W.2d 681, 687 (1961) (awarding interest in an action to foreclose a mechanic's lien against a residence). These precedents are not controlling, but they suggest we have previously operated on an assumption that interest and costs can be recovered in an action to enforce a mechanic's lien, even against a homestead.

**B. Are the Joneses Precluded by Judicial Estoppel, Law of the Case, or Res Judicata/Waiver from Asserting Their Homestead Exemption?** Notwithstanding its views on the underlying legal issue, the district court found it was too late for the Joneses to object to the inclusion of attorney fees, costs, and interest in the sheriff's sale. The court cited three reasons—judicial estoppel, law of the case, and res judicata/waiver. Significantly, this mechanic's lien foreclosure action was filed in June 2013, but the homestead exemption was not raised until more than four years later in August 2017. The Joneses argue that timing is not dispositive, and the district court erred in invoking these three doctrines. Because we find the issue of res judicata/waiver controlling, we do not address the other two doctrines.

The district court found principles of res judicata and waiver barred the Joneses' assertion of a homestead exemption. The court particularly relied on *Francksen v. Miller*, 297 N.W.2d 375 (Iowa 1980). In that case, a foreclosure action proceeded to judgment without the homeowner having raised a homestead claim. *Id.* at 376. The homeowner appealed from that judgment but dismissed his appeal. *Id.* He did not assert the homestead defense until after the sheriff's sale had taken place. *Id.* At that point, the district court found the assertion untimely. *Id.* Later, the homeowner again tried to raise the homestead as a defense in the purchaser's forcible entry and detainer (FED) action. *Id.* We held that the original foreclosure decree was res judicata:

> The record of the foreclosure suit shows defendant did not assert his homestead claim until after the sheriff's sale. The trial court held the claim was untimely and refused to set the sale aside. No appeal was taken from that adjudication. Therefore, under *Dodd* [*v. Scott*, 81 Iowa 319, 46 N.W. 1057 (1890)], defendant is precluded from raising a homestead defense in the present action, whether grounded on his own right or derived from his wife's right. This is based on the principle of res judicata.

*Id.* at 377.

Although *Francksen* bears some similarities to the present case, there are also differences. This case has never involved two separate legal proceedings, such as the foreclosure action and the FED in *Francksen.* Furthermore, when the Joneses raised their homestead right in August 2017 before the second sheriff's sale, the foreclosure decree was still winding through the appellate courts on the Joneses' second appeal.

The pertinent question to ask is whether *Francksen* applies whenever a homeowner fails to raise the homestead exemption before the foreclosure decree eliminating the alleged homestead interest is entered. In *Larson v. Reynolds & Packard,* we noted a failure to assert a homestead

right in a foreclosure action could preclude a party from later raising it. 13 Iowa 579, 582 (1862). There we reversed a decree of foreclosure and a sheriff's sale because the complainant's wife had not been made a party to the foreclosure proceeding. *Id.* Yet we added,

> If complainant's present wife had been made a party to the bill to foreclose, we think the controversy would have been at an end. A failure to set up the homestead exemption at that time would have concluded and estopped them from making the claim against one holding under the sale. The order of foreclosure would have settled the homestead right, and in an action for the possession, it could not be again adjudicated.

*Id.*

Additionally, in *Haynes, Hutt & Co. v. Meek,* we precluded a defendant from raising his homestead rights in an FED action after the foreclosure suit terminated, observing "this homestead right, if it ever existed, was lost to him by failing to set it up in the foreclosure proceeding." 14 Iowa 320, 322 (1862).

In *Dodd,* which involved another FED action, we again reaffirmed, "Being a party to the foreclosure suit, if he had a homestead right available to him as a defense therein, he must interpose it, or the right is lost." 81 Iowa at 320, 46 N.W. at 1058; *see also In re Sinnard,* 91 B.R. 850, 853 (Bankr. N.D. Iowa 1988) (citing *Dodd* and stating that "[a] debtor's homestead claim is a personal defense to a mortgage foreclosure action, and is waived by the putative claimant's failure to urge it in a foreclosure action"). Ninety years later, we relied on *Dodd* in *Francksen,* 297 N.W.2d at 377.

Also on point is *Collins v. Chantland,* 48 Iowa 241 (1878). The case was a nineteeth-century precursor to a dramshop action:

> Alice McNamara instituted an action against Peter Maloney for injuries sustained by reason of sales of intoxicating liquors to her husband; that Collins was made a party to the action,

and a lien was claimed against his real estate occupied by Maloney, where the liquors were sold.

*Id.* at 242. McNamara (the plaintiff) prevailed against Collins (the homeowner). *Id.* Then Collins failed to assert his homestead rights until a judgment enforcing the lien was entered and the property was set for sale. *Id.* Although Collins filed a petition prior to the sale, we held this was too late:

> The plaintiff Collins was a party to the action wherein judgment was rendered against his property. Any defense which he had to the claim for a lien made against him should have been made in that action. Failing to make such defense, he cannot resist the enforcement of the judgment upon the ground that the property is exempt from the lien. The question of the lien is *res adjudicata.* His ignorance of his rights at the time the judgment was rendered is no ground for setting it aside.

*Id.* at 243.

Finally, in *Weir & Russell Lumber Co. v. Kempf*, the plaintiff obtained favorable provisions in a decree of foreclosure on a mechanic's lien. 234 Iowa 450, 451–53, 12 N.W.2d 857, 858–59 (1944). The defendant later urged, among other things, that the decree violated her homestead rights. *Id.* at 453–54, 12 N.W.2d at 859–60. We rejected this contention, stating, "The collateral attack now made upon the decree . . . cannot be sustained. The decree is not void and is not subject to collateral attack for mere errors or irregularities." *Id.* at 454, 12 N.W.2d at 860.

Based on these authorities, we hold that the March 24, 2017 order modifying the prior February 16, 2015 order and granting a judgment in rem against the home to Standard Water for $4900 plus $58,953.69 in attorney fees has conclusive and binding effect. There is no question that the Joneses could have raised their homestead exemption before the entry

of these orders.[7]   In effect, their August 2017 motions challenging the sheriff's sale were a collateral attack on the previously entered foreclosure decrees.  For those motions to succeed, the previously entered orders had to be wrong.

It is true that the Joneses appealed the March 24, 2017 order.  But the appeal raised only the excessiveness of the fees, and it was unsuccessful.

This is a case where "[t]he order of foreclosure would have settled the homestead right." *Larson*, 13 Iowa at 582.  The Joneses "cannot resist the enforcement of the judgment upon the ground that the property is exempt from the lien.  The question of the lien is *res adjudicata.*" *Collins*, 48 Iowa at 243.  "Being a party to the foreclosure suit, if [the Joneses] had a homestead right available to [them] as a defense therein, [they] must interpose it, or the right is lost." *Dodd*, 81 Iowa at 320, 46 N.W. at 1058.

This outcome makes sense.  Had the Joneses asserted their homestead exemption earlier, much of this litigation could have been avoided.  The parties and the court system would have saved a great deal of time and trouble.

Critical to our holding is the fact that the district court's February 2015 and March 2017 decrees recognized that Standard Water's attorney fees were part of the mechanic's lien on which Standard Water could foreclose and were superior to any interest of the Joneses in the property.  This would be a different case if Standard Water were attempting to execute by sheriff's sale on a personal judgment, for example.

---

[7]As previously noted, the record suggests they moved into the house in 2014.

**V. Conclusion.**

For the foregoing reasons, we affirm the judgment of the district court. We affirm in part and vacate in part the decision of the court of appeals.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except McDonald, J., who takes no part.